[No. 18289. *En Banc.* May 26, 1925.]

HARRY H. PROCTOR *et al., Appellants,* v. F. W. SIM *et al., Respondents.*[1]

NAVIGABLE WATERS (1)—LAKES—WHAT CONSTITUTES. A lake covering twenty-five acres, about forty or fifty feet deep at its deepest point, used principally as a pleasure resort for boating, fishing, swimming and skating, is not navigable in fact, where it is not so situated that it can be used as a highway for trade or travel or as a means of transportation.

WATERS AND WATER COURSES (50)—NON-NAVIGABLE LAKES—TITLE TO WATERS. The owners of the bed and shores of a small inclosed non-navigable lake, in the arid region of the state, are not the owners of the water, as against the right to take the same for irrigation; in view of Const., Art. 21, § 1, declaring the use of waters for irrigation to be a public use, and the policy of the state to regulate and control the same, as provided by Rem. Comp. Stat., § 7351.

SAME (25, 26)—RIPARIAN RIGHTS—NON-NAVIGABLE LAKES—NATURE AND EXTENT OF RIGHTS. The provision in Rem. Comp. Stat., § 7351,

[1]Reported in 236 Pac. 114.

of the water code that nothing in the act shall be construed to affect existing rights of riparian owners, applies only to surplus waters, and does not assure to the riparian owners, holding all the bed and shores of a non-navigable lake in the arid region of the state, the common law ownership of the waters; in view of the fact that their "existing" rights when they acquired title, were restricted to the beneficial use of surplus or unappropriated water, as appears from early legislation in 1890, Rem. Code, §§ 6325, 6326.

TOLMAN, C. J., FULLERTON, and MACKINTOSH, JJ., dissent.

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered March 15, 1923, upon findings in favor of the defendants, in an action for damages for trespass, tried to the court. Affirmed.

*F. V. Brock,* for appellants.

*Eugene D. Clough,* for respondents.

*The Attorney General, B. B. Adams, Assistant, Reese H. Voorhees,* and *Frank R. Jeffrey (Fred J. Cunningham,* of counsel), *amici curiae.*

BRIDGES, J.—There being no statement of facts, appellants rely entirely upon the pleadings, findings of fact, conclusions of law and judgment. It is contended that the findings do not support the conclusions of law and that the latter do not support the judgment.

Duck lake is located within the boundaries of lands owned by the appellants in Okanogan county, this state, and is within the arid district. A particular description of it will be found in the findings hereinafter set out in full. The respondents, or some of them, own a growing orchard on lands within the immediate vicinity of but not bordering on the lake. Some years before the commencement of this suit they constructed a pumping plant on the lake and by means thereof took some of its waters to irrigate their lands. In so doing, their pipe line ran over appellants' lands for a short distance. The purpose of the action was to

recover damages of the respondents for trespassing upon appellants' lands, and for the value of the water which the former took from the lake for irrigating during 1918, 1919 and 1920. The trial court found that the lake was navigable, gave appellants judgment in the sum of one hundred dollars on account of respondents' trespassing upon their land, and refused any relief on account of the water taken. The court's findings of fact and conclusions of law follow:

I.

"That the allegations of paragraph 1 of plaintiffs' complaint are true; that the plaintiff acquired the land described in said paragraph I as his homestead and settled upon said land some years prior to 1906, at which time he received a United States patent for said land.

II.

"That said lands are quite rough and rolling and a small portion of the area is covered with rock and unfit for cultivation. That plaintiff is not now cultivating and has never cultivated any part of his said homestead except a very small portion thereof many years ago, and has never used any of the water of Duck lake for irrigation or other purposes unless of a very small portion some years ago.

III.

"Duck lake is an oval shaped meandered lake about eighty rods in length and sixty rods in width and from forty to fifty feet in depth at its deepest point, dropping off rapidly in depth on all sides except to the north where there is a sandy beach. On the north shore the water is about ten feet in depth at a distance of about fifty feet from the ordinary high water mark, while on the other shore it attains a depth of ten feet much nearer the shore. That said lake is fed by underground percolating waters and that the surface of the lake at its highest stage is from sixty to seventy feet below the average level of the surrounding land; that Duck lake is now and has been for a considerable number of years past, used considerably as a pleasure

resort, partly for boating and fishing but the most part for swimming and bathing; it has also for many years past been used by many members of the community for cutting ice and to some extent for skating; that said lake is in fact navigable.

### IV.

"That Duck lake is a meandered lake and included within the boundary lines of plaintiff's said land except a small portion of the southwest corner of said lake, which is in section 15 at the corner thereof; and not in its natural state outside of said section 11.

### V.

"That the defendants constructed a pumping plant on plaintiff's said land a portion of which is located outside of the meandered lines of said lake, and a pipe line of about forty-five or fifty feet in length over and across part of plaintiff's said land to connect said pumping plant with the Government irrigation canal and that by means of said pumping plant and pipe line defendants pumped water from said lake for irrigation purposes during the years 1918, 1919 and 1920 for approximately two hundred and fifty acres of bearing orchards owned by the defendants.

### VI.

"That the defendants had applied for and received a permit from the state hydraulic engineer to pump waters from said lake upon their said lands.

### VII.

"That said lake fills up after being pumped down and at the time of the trial of this action there was as much water in the lake as at the time the defendants commenced pumping.

### VIII.

"That there are other pumping plants located along the banks of said lake not owned or operated by the defendants which were pumping and using water from said lake for the purpose of irrigating other lands than those owned by the defendants at the same time defendants were using such water; that the plaintiffs were damaged by the acts of the defendants in going

20—134 WASH.

over and across lands and in excavating and establishing a pipe line across lands owned by the plaintiffs outside of the meandered lines of said lake, in the sum of $100.

"From the foregoing facts the court makes the following conclusions of law:

### I.

"Said Duck lake being a navigable lake the plaintiffs had no riparian rights to the waters thereof.

### II.

"That the plaintiffs were not damaged by the defendants' use of the waters of Duck lake.

### III.

"That the plaintiffs are entitled to judgment against the defendants for the sum of $100 by reason of injury to their lands caused by the defendants passing over the same and in making excavation thereof; that the plaintiffs are entitled to their costs in this action."

We believe that the appellants concede that, if the lake is navigable, the judgment is right; but they deny its navigability and contend that, being non-navigable and being wholly within their land, they own its waters; that if it should be held that they are not the owners, then their riparian rights give them the exclusive control of the waters; that, under no circumstances, may any of the waters be taken to irrigate non-riparian lands such as respondents' and that the doctrine of *Brown v. Chase,* 125 Wash. 542, 217 Pac. 23, with reference to the surplus waters of a stream is not applicable to like waters of a lake. It may be said here that it is not denied that this lake has much water than can be used by the appellants for domestic purposes or irrigating their lands, and that in this sense there are large quantities of surplus waters and will continue to be because the waters are continually being fed by springs.

The first question to be discussed is whether the lake is navigable.

Navigability is always a question of fact. Whether a body of water is navigable in the true sense of the word depends, among other things, upon its size, depth, location and connection with, or proximity to, other navigable waters. It is not navigable simply because it is floatable for logs or other timber products, or because there is sufficient depth of water to float a boat of commercial size. A lake which is chiefly valuable for fishing or for pleasure boats of small size is ordinarily not navigable. In order to be navigable it must be capable of being used to a reasonable extent in the carrying on of commerce in the usual manner by water. "Navigability in fact is, in the United States, the test of navigability in law; and whether a river is navigable in fact is to be determined by inquiry whether it is used, or is susceptible for use, in its natural and ordinary condition, as a highway for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." *Oklahoma v. Texas,* 258 U. S. 574, 66 L. Ed. 771. "Navigable waters mentioned in § 1, of article 17, of our state constitution include only such waters as are navigable for general commercial purposes." *Watkins v. Dorris,* 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199; *Harrison v. Fite,* 148 Fed. 781. To be navigable a lake must be so situated and have such length and capacity as will enable it to accommodate the public generally as a means of transportation. *Griffith v. Holman,* 23 Wash. 347, 63 Pac. 239, 83 Am. St. 821, 54 L. R. A. 178. It is clear to us that Duck lake does not meet these qualifications. It is wholly within the lands owned by appellants, and it is about 1,300 feet in length and 1,000 feet in width, and from 40 feet to 50 feet in depth at its deepest point and covers about 25 acres. It is from 60 feet to 70 feet below the average level of the surrounding lands. The principal use

to which it has heretofore been put has been as a pleasure resort for boating and fishing, swimming and skating. It is meandered, but all of the authorities hold that that fact does not make a river or lake navigable. It is stated in the briefs, and seems to be conceded, that this lake does not connect with, nor is it in the immediate vicinity of, any navigable waters, nor are there on its shores any place where commerce is carried on.

Respondents rely for the most part on *Ortel v. Stone,* 119 Wash. 500, 205 Pac. 1055. That case involved Davis lake, in Okanogan county. It had a length of about three-quarters of a mile and an average width of about one-eighth of a mile and covered an area of about forty acres. In many respects it was similar to the one involved here, but there are some distinguishing features. It ought to be said that the trial court thought this lake was not navigable till his attention was called to the *Davis lake* case. We are now of the opinion that we went to the extreme length in holding Davis lake to be navigable, and we now wish to restrict rather than to extend the doctrine of that case, thereby conforming to the Federal rule.

We hold that Duck lake is not navigable.

The more difficult question is, what are the rights of the appellants within whose land this lake is located. The amount of money involved is small, but the principle of law is most important. We have been greatly assisted, not only by the briefs and arguments of the parties to the suit, but also by three or four *amici curiae* briefs. Let us say here that our discussion has reference only to a natural lake the surplus waters of which can be successfully used for irrigation purposes. We have nothing here to do with artificial ponds nor small ponds which are incapable of being extensively

used for irrigation purposes. Whether the waters of such ponds or small lakes belong to the public or may be controlled by the state is not involved here. Nor does our discussion involve any rights of riparian owners on lakes such as the one involved here, except in so far as they may be affected by taking waters for irrigation and domestic purposes. It should also be remembered that the respondents had the permit of the state hydraulic engineer to take such waters as they used.

That the appellants own the banks and bed of this lake there can be no question; that proposition is too well settled in this state to need citation of authorities.

We cannot accept, however, their contention that they own the waters of this lake and may do as they please with them. They concede that a riparian owner on a non-navigable stream does not own the waters while they flow through his land, but contend that the situation is different with reference to a lake which has neither a visible source of supply nor an outlet and which does not form an integral part of a stream. It may be conceded that some of the courts have held in accordance with this contention, but none of such cases are from states which have arid lands. Whether the riparian owner is also the owner of the water may well depend upon the public policy of the state as expressed by its legislative body and its courts. Long ago some of the western arid states declared all waters belonged to the public. *Walbridge v. Robinson*, 22 Idaho 236, 125 Pac. 812, 43 L. R. A. (N. S.) 240. At an early date the commonwealth of Massachusetts declared the waters of her great ponds to be public. *Watuppa Reservoir Co. v. Fall River*, 147 Mass. 548, 18 N. E. 465, 1 L. R. A. 466. Article 21, § 1, of our constitution says:

"The use of the waters of this state for irrigation, mining and manufacturing purposes shall be deemed a public use."

Section 7351, Rem. Comp. Stat. [P. C. § 7203], being a part of the water code of 1917, provides that:

"The power of the state to regulate and control the waters within the state shall be exercised as hereinafter in this act provided. Subject to existing rights all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; . . . ."

This declaration to the effect that all waters within the state belong to the public is but an echo of legislative enactments which have existed in this state for many years, as we will later show. When it is considered that a large portion of this state is arid and that its growth and development depend greatly upon the use of the waters on the lands therein, it was most natural that the state from the beginning should have laid claim to the waters within its boundaries, in order that it might facilitate the reclaiming of its arid lands.

We have no hesitancy in holding that the waters of this lake are not owned by the appellants as against the right to take water therefrom for irrigation.

While there is no case in this state directly deciding that the owner of lands bordering on a non-navigable lake has riparian rights, we doubt not that he has. Every reason that gives riparian rights to the owner of lands bordering on non-navigable streams will give similar riparian rights to the owner of land bordering a non-navigable lake. This question has been elaborately discussed by the supreme court of California in *Turner v. James Canal Co.*, 155 Cal. 82, 99 Pac. 520, 132 Am. St. 59, 22 L. R. A. (N. S.) 401. There the court fully reviewed the authorities and held that the

owner of land bordering a non-navigable lake had the same kind of riparian rights as the owner of land touching a non-navigable stream. This court has also pointed in the same direction. *Madson v. Spokane Valley Land etc. Co.,* 40 Wash. 414, 82 Pac. 718, 6 L. R. A. (N. S.) 257; *Bernot v. Morrison,* 81 Wash. 538, 143 Pac. 104, Ann. Cas. 1916D 290.

But probably appellants' most earnest argument is that, being riparian owners, they have the right to the exclusive use of the waters of the lake for any and all purposes and they may not be increased or diminished except by others having equal rights, to wit: riparian owners, of which there are none upon this lake, and that only riparian lands may have the use of the waters of a lake. They pin their claims to the common law and to § 7351, Rem. Comp. Stat., being a part of the water code enacted in 1917, and reading as follows:

"The power of the state to regulate and control the waters within the state shall be exercised as hereinafter in this act provided. Subject to existing rights all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; and, as between appropriations, the first in time shall be the first in right. *Nothing contained in this act shall be construed to lessen, enlarge or modify the existing rights of any riparian owner, or any existing rights acquired by appropriation or otherwise.*" Laws of 1917, p. 447, § 1.

We have italicized that portion chiefly relied on. What, then, are "the existing rights" of the appellants as riparian owners which are to be considered as vested rights and may not be interfered with? Our answer is that it is the right to the beneficial use of such portions of the waters of the lake as are either directly or prospectively, within a reasonable time,

proper and necessary for the irrigation of their lands and for the usual domestic purposes. In *Brown v. Chase, supra,* we expressly so held with reference to the waters of a non-navigable stream. It is true that the common law would give the appellants other existing rights, as, for example, the right to have the waters lap their shores as they were by nature wont to do and undisturbed and undiminished except by the exercise of similar rights in other riparian owners, if any there were. Section 143, Rem. Comp. Stat. [P. C. § 8252], provides that "the common law, so far as it is not inconsistent with the constitution and laws of the United States, or of the state of Washington, nor incompatible with the institution and conditions of society in this state, shall be the rule of decision in all the courts of this state." But much of the English common law of riparian rights is inapplicable to the arid portions of this state and is incompatible with our institutions and conditions. For years past, the trend of our decisions and the tenor of our legislation have been to restrict and narrow the common law of riparian rights, and in the case of *Brown v. Chase, supra,* we completely abandoned the idea that the riparian owner is entitled "to the uninterrupted flow of the waters on and past his premises," and that none but riparian owners could make use of such water. All the right they now have by virtue of their riparian ownership is the beneficial use of the water, whether of a non-navigable stream or of a non-navigable lake. In *Brown v. Chase, supra,* we expressly held that, notwithstanding some loose expressions to be found in some of our cases, "waters of non-navigable streams in excess of the amount which can be beneficially used, either directly or prospectively, within a reasonable time, on, or in connection with riparian lands, are subject to appropriation for use on non-riparian

lands." That case involved the right of a non-riparian owner as against a riparian owner to take the surplus waters of a stream for the purpose of irrigating non-riparian lands.

But such has been the course of our legislation on this subject for many years. In 1890 it was enacted that:

"Any person, corporation or association of persons is entitled to take from the natural streams or lakes in this state water for the purpose of irrigation and mining, not heretofore appropriated or subject to rights existing at the time of the adoption of the constitution of this state, subject to the conditions and regulations imposed by law: Provided, that the use of water at all times shall be deemed a public use, and subject to condemnation as may from time to time be provided for by the legislature of this state." Laws of 1890, p. 706, § 1; Rem. Code, § 6325.

In the same year it was enacted that riparian owners:

" . . . shall be entitled to the use of any water of said stream not otherwise appropriated for the purpose of mining and irrigation to the full extent of the soil for agricultural purposes." Laws of 1890, p. 706, § 2; Rem. Code, § 6326.

In the same year it was further enacted that:

*"Any person who owns or has the possessory right to lands in the vicinity of any natural stream or lake, not abutting such stream or lake, may take water from such stream or lake if there be any surplus of unappropriated water in such stream or lake."* Laws of 1890, p. 707, § 7; Rem. Code, § 6331.

It should be noted that these statutes refer to lakes as well as streams. It is true that these enactments were superseded by the 1917 water code, *supra,* but they were in force at the time the appellants obtained the title to their lands and their substance is embodied in the present water code. These provisions of stat-

utes, and others that might be cited, show that it has
for many years been the declared public policy of this
state that water of streams or lakes may be used on
non-riparian lands for irrigation purposes, and that
the doctrine that the riparian owner is entitled to have
the waters stand or flow in their natural and un-
diminished state upon or across his land is not in
force here, so far as irrigation is concerned. But there
is no need to prolong the discussion, because the rea-
soning of *Brown v. Chase, supra,* must control our
conclusion here. There Judge Holcomb, in a very
thorough opinion, said that the rigid rules of the com-
mon law with reference to riparian rights had been
greatly modified in this state, and that "the waters of
non-navigable streams in excess of the amount which
can be beneficially used, either directly or prospec-
tively, within a reasonable time, on, or in connection
with riparian lands, are subject to appropriation for
use on non-riparian lands." The "existing vested
rights" which our statute preserves to the riparian
owner cannot, therefore, have reference to the surplus
waters of a stream.

This question has very recently been elaborately dis-
cussed by the supreme court of Oregon, which came to
the same conclusion we have reached. *In re Hood
River,* 227 Pac. (Ore.) 1065. Unless, therefore, there
is to be drawn some distinction between surplus waters
of a stream and those of a lake, the rule of *Brown v.
Chase, supra,* must control. But there cannot be any
difference based on either logic or necessity. The sur-
plus waters of the stream are not different from the
surplus waters of a lake. In one instance the riparian
owner owns the bed of the stream, and in the other the
bed of the lake. Each has a riparian right and that
right is the same in the one instance as in the other.
What special virtue have the still surplus waters of a

lake that they may not be made to perform the same service as the moving surplus waters of a stream? We know of none. It is said that there is a difference, but it has not been pointed out. It would seem a waste of energy to compel the surplus waters of a stream to labor on arid lands and at the same time permit surplus waters of a lake to lie idle.

We extend the doctrine of *Brown v. Chase, supra,* to non-navigable lakes and hold that the waters thereof in excess of the amount which can be beneficially used, either directly or prospectively, within a reasonable time, in connection with riparian lands, are subject to appropriation for use on non-riparian lands.

One of the excellent briefs of *amici curiae* severely criticizes the doctrine of *Brown v. Chase* and forcibly but courteously asks us to abandon it before it is too late. We see no reason why we should do so. We believe that its doctrine is perfectly sound and will work to the good of the state at large and will deprive no one of any rights which he may justly claim.

Our conclusions are:

(1)   That Duck lake is non-navigable.

(2)   That the appellants own the shores and bed thereof.

(3)   That they do not own or have a right to control its surplus waters.

(4)   That their only existing or vested right is the beneficial use of the waters for irrigation and domestic purposes to the extent hereinabove mentioned by us, and that any surplus waters are subject to appropriation for irrigating non-riparian lands.

The judgment is affirmed.

PARKER, HOLCOMB, MAIN, MITCHELL, and ASKREN, JJ., concur.

TOLMAN, C. J., FULLERTON, and MACKINTOSH, JJ., dissent.