[No. 30729.   Department One.   May 23, 1949.]

HAROLD H. BERRY et al., Appellants, v. E. G. POND et al., Respondents.[1]

[1]Reported in 206 P. (2d) 506.

*Simmons & McCann*, for appellants.

*Harris & Harris*, for respondents.

MALLERY, J.—In 1889, Steinle bought a one-sixteenth section of land from the United States. Assuming that he owned a full forty acres running 1320' x 1320', he made a "paper" plat of "E. Steinle's 40 Acre Tract," dividing it into eight five-acre lots. The southwest lot was designated lot 8. The plat was filed and since 1889 has served as reference for legal descriptions in conveyances and in tax assessments. The correct north boundary of the tract was known, and Steinle built a south boundary fence 1320 feet south of it.

The original government survey was erroneous in that, while the east-west dimension of the one-sixteenth section was 1320 feet as it should be, the north-south dimension was 60 feet short, or only 1260 feet in depth. The result was that lot 8, here in dispute, as platted and marked on the ground, overlapped the south line of the one-sixteenth section by 60 feet. The south boundary fence was maintained in the same location until the time of this action. Steinle also built a cabin within the overlapping 60 foot strip immediately north of the fence. The cabin burned but was replaced in the identical location by a small house now worth two thousand dollars.

E. G. Pond purchased the south half of lot 8 in 1932. He and his predecessors since 1889 occupied, improved, and paid the taxes to date with reference to the plat and the land it purported to cover. In other words, they purchased, occupied, improved, and paid taxes as if "E. Steinle's 40 Acre Tract" in fact measured 1320 feet in the north-south dimension.

In October, 1942, Harold H. Berry bought a one-acre lot at a King county tax sale for two hundred dollars, hereafter referred to as tax lot 16, located immediately south of lot 8, which overlaps it, as explained.

Shortly after the tax sale, Berry had the common boundary surveyed. The survey revealed that Pond and his predecessors since 1889 had encroached 60 feet into tax lot 16. Until the survey, neither of the parties to this action, their predecessors, nor any county tax official had knowledge of the discrepancy between Steinle's plat and the original Federal survey.

When Pond refused to withdraw from the disputed strip, Berry brought this action to quiet title. From a judgment in favor of defendants, the plaintiffs appeal.

■ Appellants contend: "It is elementary that you cannot plat more land than you own." This begs the question. The doctrine of adverse possession is never invoked except to validate an act that was originally illegal.

They contend:

"The judgment of tax foreclosure is conclusive in this case under Rem. Rev. Stat. § 11288. The property purchased at the tax sale was 'liable to the tax' and the tax thereon was never paid. Respondents are estopped to deny these facts under the said statute."

■ Rem. Rev. Stat., § 11288 [P.P.C. § 979-313], does make the treasurer's deed "prima facie" evidence of the validity of the tax-foreclosure judgment "except in cases where the tax has been paid, or the real property was not liable to the tax." We think the tax on the 60 foot strip of land overlapping appellants' tract was paid. It is true that the payment was not made under an accurate description, but the error of all concerned was in the description only and not as to the actual land improved, occupied, and assessed.

We cite the case of *Sorenson v. Costa*, 32 Cal. (2d) 453, 196 P. (2d) 900, in which the plaintiff had a deed describing a vacant lot. Due to a mistaken notion held generally throughout the community for many years, plaintiff, since

he first purchased the vacant lot, had lived in a home occupying an improved residential lot which extended 75 feet west of the vacant lot. The assessor appraised the residence and the improvements on the lot which plaintiff occupied and sent the tax statement to the plaintiff, who paid the taxes, but the legal description on the tax statement described the adjacent vacant lot. The defendant, also a resident of this block, made the same mistake for forty years. When it was discovered that the defendant's deed described the land which the plaintiff occupied, plaintiff brought an action to quiet title in the disputed lot in himself by adverse possession. The defendant claimed that plaintiff's adverse possession had not been perfected because the plaintiff had not paid taxes on the disputed lot. He supported his position by introducing the tax receipts on which the legal description described the vacant lot.

The court held that plaintiff's adverse possession had been perfected because plaintiff and his predecessors had actually paid all the taxes assessed on the improved lot, irrespective of the description on the tax rolls.

Our own case of *Rushton v. Borden,* 29 Wn. (2d) 831, 190 P. (2d) 101, cited by appellants, is distinguishable from the instant case. There it was held that the foreclosure of the tax lien wiped out the claim of adverse possession. The appellant in that case argued that by paying taxes on land described as "Tax No. 2" he had paid taxes on the land in dispute, and that therefore the tax foreclosure was invalid. The court did not sustain him. Re-examination of the exhibits in that case indicates that "Tax No. 2", as shown on the assessor's map, was not in Government Lot 3, over which the dispute arose, so that there could have been a tax delinquency on the disputed land and there could have been a valid tax foreclosure. That was not the situation here.

The appellants contend:

"The respondents have failed to point out any defect in the proceedings under the tax foreclosure, and the trial judge's reasoning seems to be that although the respondents were not taxed for any land in the southwest quarter of the

northeast quarter of said section, yet they paid taxes on it.
. . .

"No attempt has been made by the respondents to set aside the tax foreclosure sale and more than three years have now elapsed since it was held. Rem. Rev. Stat. Sec. 162, provides in part as follows:

" 'Actions to set aside or cancel the deed of any county treasurer issued after and upon the sale of lands for general, state, county or municipal taxes or for the recovery of lands sold for delinquent taxes, must be brought within three years from and after the date of the issuance of such treasurer's deed: . . .' "

■ The leading case on this point is *Buty v. Goldfinch*, 74 Wash. 532, 133 Pac. 1057, Ann. Cas. 1915A, 604, 46 L.R.A. (N.S.) 1065, in which case the plaintiff sought recovery of real property, claiming title thereto under a tax deed; the defendant, being in possession of the property and claiming to have been in continuous possession since before the tax foreclosure, defended upon the ground, among others, that the tax foreclosure, judgment, and deed were void. The principal contention for plaintiff was that the tax deed had become conclusive against the claims of the defendant, and that she had been thereby divested of all title to the property, by virtue of the three-year statute of limitation against actions to set aside tax deeds. The court held:

"This respondent did not commence this action 'to set aside or cancel the tax deed,' nor 'for the recovery of' the property in question. She was already in possession of the property, and in the full enjoyment of all the rights in that regard which ownership and possession could possibly give her. Being in this situation, she had no occasion to do anything or take any steps looking to the protection of those rights until some one sought to invade them. All that she here seeks to invoke in the protection of her rights is by way of pure defense. If the language of this statute should be given the construction claimed for it by counsel for appellant, we are unable to see how it could be held to be a valid exercise of legislative power in the light of the due process of law provisions of the Federal and state constitutions.
. . .

"The logic of all of these decisions is that the statute will not run in favor of the holder of a tax deed while the land in

question is in the actual possession of the original owner. This, of course, is in harmony with the view that he who is in possession and full enjoyment of his property is not required to protect his right to the property by instituting legal proceedings against another who merely claims such property but takes no steps to recover it."

As was said in *Pinkham v. Pinkham*, 61 Neb. 336, 85 N. W. 285:

"The right to commence and prosecute an action may be lost by delay, but the right to defend against a suit for the possession of property is never outlawed. The limitation law may, in a possessory action, deprive a suitor of his sword, but of his shield never."

Finally, appellants contend that: "Obviously, there can be no adverse possession against a title to property acquired under tax foreclosure."

■ ■ Properly understood, we agree with this statement. A title by adverse possession is no higher or better than any other, nor is the adverse possessor exempt from taxation or tax foreclosure. His defenses do not differ from those of any other owner of real estate. A tax title when valid is a new title and takes free from all pre-existing claimants, but that does not mean that a tax foreclosure is subject to no defenses or that the judgment of foreclosure is valid against one who has either paid his taxes in fact or made a bona fide attempt to do so. *Nalley v. Hanson*, 11 Wn. (2d) 76, 118 P. (2d) 435. It is the *fact* of payment of the taxes on the land occupied, not the description used in the tax receipt, that is determinative of the issue here. See *Sorenson v. Costa, supra*, which is closely in point in the instant case.

The judgment is affirmed.

JEFFERS, C. J., BEALS, and STEINERT, JJ., concur.

HILL, J. (dissenting)—I dissent. The NW¼ of the NE¼ of section 11, township 23 north, range 4 east, W. M., was platted into eight five-acre tracts, the plat being known as "E. Steinle's 40 Acre Tract." As shown on the plat, the five-acre tracts are in two east-west tiers of four tracts each. Each tract is shown as being 330 feet east and west and 660

feet north and south. Tract 8 is in the southwest corner of the plat.

The respondents had acquired title to the S½ of tract 8, which, according to the plat, gave them a tract 330 feet by 330 feet. This is carried on the assessor's records as the south 330 feet of tract 8. The south line of the S½ of tract 8 is also the south line of the NW¼ of the NE¼ of section 11 and the north line of the SW¼ of the NE¼ of the same section.

The SW¼ of the NE¼ had been divided into smaller tracts, and one of these was described as the N⅕ of the W½ of the west ten acres of the N½ of the SW¼ of the NE¼. This is shown on the assessor's maps as tax lot 16, and, for the sake of brevity, that designation will be used hereafter.

Tax lot 16 is approximately 126 feet north and south and 330 feet east and west. Its north line is the north line of the SW¼ of the NE¼, which would be the south line of the NW¼ of the NE¼ and of the S½ of tract 8.

The NW¼ of the NE¼, though platted by E. Steinle as though it were a standard government subdivision, is only 1260 feet north and south instead of 1320 feet, and, to get their full 330 feet north and south, the owners of the S½ of tract 8 occupied and used approximately sixty feet of tax lot 16, which, as we have seen, is in the SW¼ of the NE¼. The use by the respondents and their predecessors in interest of that sixty-foot strip had continued for so long a period and was of such character as to have vested title in them by adverse possession.

Apparently, taxes were assessed and collected for many years, both on the S½ of tract 8, or the south 330 feet of tract 8, and on tax lot 16. In 1932, the owner of tax lot 16 quit paying taxes thereon, and in 1941 there was a tax foreclosure and a sale to King county. The appellants bought tax lot 16 from King county in 1942.

It is conceded that a tax sale wipes out a title acquired by adverse possession, but the majority says:

"Rem. Rev. Stat. § 11288, does make the treasurer's deed 'prima facie' evidence of the validity of the tax-foreclosure judgment 'except in cases where the tax has been paid, or the real property was not liable to the tax.' We think the tax on the 60 feet strip of land overlapping appellants' tract was paid. It is true that the payment was not made under an accurate description, but the error of all concerned was in the description only and not as to the actual land improved, occupied, and assessed."

It should be noted that the assessor's records show E. Steinle's 40 Acre Tract to be located in the NW¼ of the NE¼. The tax statements paid by the respondents covered the south 330 feet of tract 8, E. Steinle's 40 Acre Tract, and never purported to cover any part of the SW¼ of the NE¼. The sixty-foot strip in question is a part of the SW¼ of the NE¼ and was assessed and taxed as such. To say that the respondents ever paid any taxes on any property in the SW¼ of the NE¼ seems to me sheer sophistry, although I can agree that they *believed* they were paying taxes on this sixty-foot strip, and that *they had reason so to believe.*

As the majority says, Rem. Rev. Stat., § 11288, makes the deed executed by the county treasurer *prima facie* evidence of the validity of the tax-foreclosure judgment, except in cases where the tax has been paid or the real property was not liable to the tax. We have, to the two exceptions provided by the legislature, already added a third—frustration of the taxpayer in the payment of his taxes, by a public officer. *Pierce County v. Newbegin,* 27 Wn. (2d) 451, 178 P. (2d) 742; *Nalley v. Hanson,* 11 Wn. (2d) 76, 118 P. (2d) 435; *Bullock v. Wallace,* 47 Wash. 690, 92 Pac. 675. We now, whether we admit it or not, add a fourth exception, *i.e.,* where property on which the tax is foreclosed is immediately adjacent to that on which a taxpayer has paid taxes and which the taxpayer believes and has reason to believe is included in the description in his tax statement.

By this decision, we not only add a new exception to

those enumerated in Rem. Rev. Stat., § 11288, but write a new chapter on "How Secure Is Your Tax Foreclosure Title?" 23 Wash. L. Rev. 132.

June 29, 1949. Petition for rehearing denied.

