[No. 31876. *En Banc.* June 12, 1952.]

ALBERT A. MAYER, *Appellant,* v. EMMA TEMBREULL HERRIN, *Individually and as Executrix, et al., Respondents.*[1]

*J. Lael Simmons,* for appellant.

*C. E. Hughes,* for respondents.

MALLERY, J.—This is an action commenced in 1950 for specific performance of an oral contract to dedicate land for a private park and bathing beach.

.The plaintiff bought "Lot 4, of Tembreulls' Lake Lucerene Div. No. 1, located in the NW ¼ of Sec. 28, Twn. 22, N. R. 6 E. W. M.," in King county, Washington, from the partnership of G. A. and R. D. Tembreull, in December, 1944. During the negotiations for the purchase, the partnership orally promised that all of the property immediately in front of, and between "Tembreulls' Lake Lucerene Div. No. 1" and Lake Lucerne, which was then being cleared and bulldozed, would be granted and conveyed for the sole usage of the purchasers of the lots in the aforementioned division, subject to the future control of the partnership. The value of the land without this covenant would have been materially less. Indeed, it is a fair inference that without it the sale would not have been made or the property improved.

[1]Reported in 245 P. (2d) 187.

The written contract of sale between the parties, dated December 20, 1944, and the warranty deed executed and delivered to the plaintiff in 1945, merely described plaintiff's lot and provided for a "community ingress and egress to Lake Lucerne." The plaintiff objected, at the time of the delivery of the contract, that it did not conform to the partnership's oral commitments, but, upon the promise of R. D. Tembreull that the covenants would be executed later, he accepted the contract as worded, made all of the payments due thereunder, and accepted a deed early in 1945 containing only the same language as was in the contract. The only subsequent action of the partnership in the performance of its oral promise was by way of filing a plat of "Tembreulls' Lake Lucerne Div. No. 1," in the office of the King county auditor on April 21, 1945, which showed a large arrow directly opposite and pointing toward lot 6 of "Pipe Lake and Lake Lucerne Div. No. 2," followed by the words: "Access to beach for benefit to owner in this plat."

The first notice that the plaintiff had that the partnership would refuse to go through with its representations as orally agreed upon, was a few days before this action was commenced. This knowledge came as a result of advertising the property in question for sale.

The court found that the oral contract fell within the purview of both the statute of frauds and the statute of limitations, since it purported to convey an interest in real property and was made in 1944.

From a judgment of dismissal of the action, the plaintiff appeals.

Appellant assigns as error (1) the dismissal of the action, (2) the court's conclusions of law that the cause was barred by the statute of limitations, (3) that it was barred by the statute of frauds, and (4) its finding of fact that appellant had failed to prove that lots 20 and 21, block 3, plat of Pipe Lake and Lake Lucerne were to be available for beach purposes to the owners of lots in the "New Addition."

As to the assignment of error directed to the statute of limitations, our question is as to when it started to run.

Appellant contends that he enjoyed the use of the land in question, and had no cause for alarm with regard to it until it was advertised for sale shortly before the action was commenced. He asserts there was no occasion to take any steps to protect his rights until someone sought to invade them, and that this did not occur until 1950. He relies upon *Buty v. Goldfinch,* 74 Wash. 532, 133 Pac. 1057, and *Berry v. Pond,* 33 Wn. (2d) 560, 206 P. (2d) 506.

In *Buty v. Goldfinch, supra,* the defendant, who was in possession of the land in question, interposed the defense that plaintiff's tax deed was void, because the court had never acquired jurisdiction of it in the tax lien foreclosure action. The plaintiff had brought the action to recover possession under a tax deed executed some eight years previously. The court held that the *defense* to the action was not barred by the statute of limitations.

In *Berry v. Pond, supra,* the distinction between a plaintiff *maintaining* an action to secure a remedy and the *defense* of a possessory action was pointed out by quoting from *Pinkham v. Pinkham,* 61 Neb. 336, 85 N. W. 285, as follows:

" 'The right to commence and prosecute an action may be lost by delay, but the right to defend against a suit for the possession of property is never outlawed. The limitation law may, in a possessory action, deprive a suitor of his sword, but of his shield never.' "

█ In the instant case, the appellant is not defending an action for possession of land. He is the plaintiff seeking to maintain an action for specific performance. He, therefore, does not fall under the rule of the cited cases.

The rule that the statute begins to run upon the *discovery* of fraud is not available to the appellant. He did not allege fraud or even that he did not know of the breach of the oral contract in 1944.

The trial court was correct in applying the statute of limitations as provided in RCW 4.16.080 [*cf.* Rem. Rev. Stat. (Sup.), § 159], which provides that an action upon a contract, not in writing, must be brought within three years. This is determinative of the outcome of this action.

For this reason, we do not reach appellant's assignments of error directed to the statute of frauds and the court's findings of fact.

The judgment is affirmed.

SCHWELLENBACH, C. J., HILL, DONWORTH, WEAVER, and OLSON, JJ., concur.

GRADY, J. (dissenting)—I am not in accord with the view that this is an action for specific performance of an oral contract to dedicate land for a private park and bathing beach.

My examination of the complaint and bill of particulars and the evidence submitted in support of them leads me to the conclusion that appellant sought a judicial recognition of his right of access to Lake Lucerne from his property and a like right of the other property owners mentioned in the bill of particulars in accordance with the agreement made with their vendors. Appellant does not seek the performance of any verbal agreement that is required to be in writing in order to be enforcible. His claim is that, when he and his associates purchased their respective properties, the vendors, as a part of the consideration therefor, agreed to preserve a right of access to the lake by holding open for such use a designated part of their land bordering on the lake. The land for access use was that between the lake and the tracts being purchased. If respondents sell the shoreland, access to the lake over it will be cut off.

The majority opinion is based upon what seems to me to be an incorrect hypothesis and a misapplication of the statute of frauds. It proceeds upon the theory that the Tembreulls verbally agreed to make a statutory dedication of the promised access area and that appellant seeks a decree compelling specific performance of such agreement. This, I believe, is erroneous. I base my belief upon the following situation, which I gather from the record:

After the Tembreulls had platted some of their property bordering on Lake Lucerne, it readily appeared that it would be to their advantage to divide a part of the upland into tracts rather than to so divide the shoreland. This

would make available more tracts for sale; but in order to add to their value and to make them attractive to purchasers who desired home property with lake advantages, it would be necessary to preserve existing riparian rights appurtenant to those tracts which would become noncontiguous to the lake when severed from the shoreland. Without right of access to the lake to enjoy such riparian rights as boating, bathing, fishing, etc., the tracts would be of little value and not salable for lakeside home purposes.

Access to a part of the lake had been cut off by the transfer of lots in Pipe Lake and Lake Lucerne Division No. 2 (hereinafter referred to as Div. No. 2). The most practicable plan seemed to be to plat a tract southeasterly of Div. No. 2 and to preserve access and other riparian rights to upland lots by converting lots 1 to 6 of Div. No. 2 and a small area of the remaining shoreland into a private park, ownership of which would be continued by the Tembreulls, but over which the purchasers of the lots would have access to the lake and the enjoyment of park and recreation privileges.

It was the desire of the Tembreulls to keep the park area in their own names so that they could have some control over it. One of them had his home there, and the other intended to do likewise. They did not want to have any more of the waterfront property used for buildings. The park site had been cleared of underbrush, trees and logs had been taken out, and bulldozing work had been done. The area was to be maintained as a park. Public authorities had informed the Tembreulls that in platting their land it would be necessary to leave a right of way for the public to get to the lake from the platted highway, because the state was planting fish in the lake and therefore they could not retain it for their private use.

A plat of Tembreulls's Lake Lucerne Division No. 1 was prepared. It had delineated thereon lots 1 on the east to 14 on the west of Div. No. 2. These lots bordered on the lake. They were not uniform in length or width, which accounts for the varying directions of the highway at their rear. This highway runs east the width of the four westerly lots,

and thence northeasterly to lot number one. The park, exclusive of lots 1 to 6, was designated "unplatted." To carry out the mandate of public authority, lot 6 of Div. No. 2 was set aside as a right of way to the lake from the highway. This was indicated on the plat by an arrow pointing to lot 6. The dedicated plat was executed December 16, 1944, was approved by the county commissioners April 11, 1945, and filed for record April 21, 1945.

During the time the plat was in the process of making, the park site was improved, and contracts of sale were entered into between the Tembreulls and appellant and others. The verbal promise to preserve right of access to the lake over the park and the easterly lots of Div. No. 2 was written into the contracts by use of the following words:

"Owner of above described lot shall have the community ingress and egress to Lake Lucerne."

Promises were made to the purchasers that this language would be made more definite so as to express clearly the access area, but the correction was not made. The same provisions were put in the deeds. However, the conclusions which must be drawn from the acts and conduct of the Tembreulls make it clear that, as between them and their vendees, it was not necessary to further designate the access area, and that the words on the plat filed subsequent to the sales, "access to beach for benefit of owners in this plat," are not a limitation of access rights to lot 6 of Div. No. 2. The area of access covered by the language used in the contracts and deeds could be shown by parol evidence. There is ample evidence in the record to support a finding that such area was the unplatted park site and lots 1 to 6 of Div. No. 2.

The pleadings and the evidence submitted present a theory which, in my opinion, entitles appellant to a decree declaring that he has a right of access to Lake Lucerne from his property over the park site, including lots 1 to 6 of Div. No. 2. By his contract and deed, the right of access to the lake appurtenant to the land owned by the Tembreulls was

preserved and remained appurtenant to lot 4 of Tembreulls Lake Lucerne Div. No. 1 when it was severed from the shoreland.

When a part of a tract of riparian land is conveyed and severed from the shoreland, access and other riparian rights are extinguished, unless they are preserved in the grant by the common owner, or continue to exist by implication of law, estoppel, or by a recognition of them by him. When title to a tract of land bordering on a nonnavigable stream or lake in this state passes by a patent from the United States, certain riparian rights attach as an incident thereto and become appurtenant to such land by operation of law (*Sturr v. Beck,* 133 U. S. 541, 33 L. Ed. 761, 10 S. Ct. 350; *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495; 2 Farnham on Waters and Water Rights, 1571, § 463a) and remain so while in one ownership. *Yearsley v. Cater,* 149 Wash. 285, 270 Pac. 804. Among such rights are boating, bathing, and fishing in the waters of the stream or lake. Access to the water also becomes an appurtenant right in order that the other riparian rights may be enjoyed. *In re Clinton Water Dist.,* 36 Wn. (2d) 284, 218 P. (2d) 309.

A discussion of severance of riparian rights and a preservation thereof when the owner of a riparian tract of land sells and conveys a part of it and it becomes noncontiguous to the water will be found in *Anaheim Union Water Co. v. Fuller,* 150 Cal. 327, 88 Pac. 978 and *Strong v. Baldwin,* 154 Cal. 150, 97 Pac. 178. The riparian right doctrine has more frequent application to streams, especially with reference to the diversion of water for domestic uses and irrigation of land, but it applies with equal force to nonnavigable lakes. *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114.

In addition to the riparian right theory, it may be that a common-law dedication to the public of the park site was made by the Tembreulls. However, this dissent being directed to the view of the majority that the action is one for specific performance of an oral contract to dedicate land for a private park and bathing beach, I shall not enter into any discussion of the subject of common-law dedication.

Such question may arise later, and I refrain from expressing an opinion thereon. I have also refrained from making reference to an additional phase of the case, namely, the status of lots 20 and 21, block 3, plat of Pipe Lake and Lake Lucerne.

The judgment should be reversed and the cause remanded for further proceedings.

FINLEY and HAMLEY, JJ., concur with GRADY, J.