(90 Hun, 525.)
## In re HARRIS.

(Supreme Court, General Term, Third Department. December 3, 1895.)

1. TAXATION—DECLARING TAX SALE INVALID—JUDICIAL ACTS OF COMPTROLLER.
    The state comptroller, in deciding an application by the purchaser to cancel a tax sale as invalid (Laws 1855, c. 427, §§ 83–85), acts judicially, and his judgment declaring the sale invalid cannot be collaterally attacked in proceedings for a writ of mandamus to compel the commissioners of the land office to direct the repayment of the purchase money as required by 1 Rev. St. (8th Ed.) p. 618.

2. PLEADING—JUDGMENT.
    A petition for mandamus, in such case, alleging that application was duly made to the comptroller to cancel the tax sale, and that his decision canceling it was duly made, sufficiently alleges a proper presentation of the application, and rendition of the comptroller's decision.

3. MANDAMUS—TO LAND Co ,MISSIONERS—REFUNDING PURCHASE MONEY.
    Under 1 Rev. St. (8th Ed.) p. 618, providing that, whenever the title to land granted by the state shall fail, it shall be the duty of the commissioners of the land office to direct the repayment of the purchase money paid to the state, the act of the commissioner in directing the repayment is ministerial, and therefore enforceable by mandamus.

4. PUBLIC LANDS—REFUNDING PURCHASE MONEY—ASSIGNEE OF PURCHASER.
    Under 1 Rev. St. (8th Ed.) p. 618, providing that whenever the title to lands granted by the state shall fail, and a legal claim, on account of such failure, shall be presented by "any person entitled thereto," it shall be the duty of the commissioners of the land office to direct the repayment of the purchase money which shall have been paid to the state by "such person," the assignee of the purchaser is entitled to the repayment of the purchase money.

Appeal from special term, Schoharie county.

Application by Peter Harris for a writ of mandamus to compel the commissioners of the land office to make an order for the refunding of certain money. From an order (33 N. Y. Supp. 1102) granting a peremptory writ of mandamus, the commissioners appeal. Affirmed.

Argued before PUTNAM and HERRICK, JJ.

T. E. Hancock, Atty Gen. (W. E. Kisselburgh, Jr., Dep. Atty. Gen., of counsel), for appellants.

Z. S. Westbrook, for respondent.

PUTNAM, J.    This is an appeal from an order directing a peremptory mandamus to issue to the commissioners of the land office, commanding them to direct that $6,300, the purchase money paid on or before February 2, 1882, by one Jere W. Finch, assignor and grantor of the applicant, Peter Harris, for certain lands sold by the state to said Finch, be repaid to said Peter Harris out of the treasury of the state, with interest.    The state acquired title to the lands in question from various tax sales, and said premises were sold on behalf of the state to Finch for $6,300 on the 1st day of February, 1882.    On the 2d day of February, 1882, Finch paid to the treasurer of the state $6,300, the purchase price aforesaid.    No patent or ·deed was ever issued to Finch, but the comptroller's certificate of sale was assigned to him.    On the 15th day of December, 1884, said premises were transferred by Finch to the applicant, Harris.    Thereafter, about the 29th day of March, 1892, the said tax sales from and by which the state obtained title were, by order of the comptroller, canceled and set aside.    In June, 1892, said Peter Harris presented to the commissioners of the land office an application that the purchase price paid by said Finch for the premises be refunded to him, on the ground of the failure of the state's title.    On the 27th day of December, 1892, said application was denied.    In the petition for a mandamus the applicant stated, in reference to the tax sales under which the state conveyed the premises in question to Finch, his assignor and grantor, as follows:

"That the said applicant herein, Peter Harris, discovering and ·claiming that the said state tax sales, and each of them, and the taxes for which said sales of said lands were made in 1871, 1877, and 1881, were wholly illegal and void, and that no title had ever passed to the people of said state, or been ·given, granted, or passed,. by reason thereof, or either of said tax sales, duly made application to the comptroller of said state, under and pursuant to the provisions of chapter 448 of the Laws of 1885 of said state, and as provided and authorized thereby and by law, to cancel, annul, and set aside the said tax sales of 1871, 1877, and 1881, and each of them, and all the title which the people of said state had acquired to said land thereby, and each of the taxes for which each of said sales had been made, upon the grounds provided and authorized by law, because the said sales. and each of them, and the said taxes, and each of them, for which the said sales had been made, were wholly illegal and void. And the comptroller, upon the said application of your applicant, the said Peter Harris, and the proof presented to said comptroller thereon and herewith, and after due examination and investigation, did on the 29th day of March, 1892, by proper order, decision, and determination, duly cancel, annul, and set aside, as wholly illegal, null, and void, the said tax sales of 1871, 1877, and 1881, and the conveyances and certificates there-

for and of said sales, and each of them, and all the right, title, and interest
which the people of the state of New York had and ever had or acquired
therein, or in or to said lands."

His statement is corroborated by the affidavit of his attorney, Z.
S. Westbrook.

The appellants read on the hearing below an affidavit of a deputy
attorney general of the state, which states:

"That he has been informed, from an examination of the records in the
state comptroller's office, and believes, that the tax sales which were can-
celed as shown by the petition of said Peter Harris in the above-entitled mat-
ter were canceled by the comptroller of the state of New York upon the fol-
lowing grounds: First, that the taxes were not carried out on the assess-
ment rolls by the supervisors; second, that the amounts of highway taxes on
the assessment rolls were not properly designated, being designated in many
instances by abbreviations, such as 'H.' and 'Hy.'; third, that the affidavit
attached to the collector's return of unpaid taxes had no venue; fourth, that.
the return of unpaid taxes to the comptroller's office described the lands in
the river section, whereas they were in the general allotment."

The affidavit does not controvert the statement contained in the
petition that Harris duly made application to the comptroller to
cancel the tax sales in question, or that proof was presented to that
officer, and that, after hearing the same and considering it, he duly
directed that the sales be canceled.   What proofs were offered, or
what the contents of the petition or papers presented to the comp-
troller were, does not appear; the affidavit merely stating that the
affiant is informed, from an examination of the records of the state
comptroller's office, and believes, that said tax sales were canceled
for the reasons in the affidavit specified.   The statute authorizes
the commissioners of the land office to direct repayment of the pur-
chase money received by the state on account of land granted by
it, when the title thereto shall fail, as follows:

"Whenever the title of the people of this state to lands granted under its
authority shall fail, and a legal claim for compensation on account of such
failure shall be presented by any person entitled thereto, it shall be the duty
of the commissioners to direct the payment of the original purchase money
which may have been paid to the state by such person, with interest at the
rate of six per cent. from the time of such payment, to be paid out of the
treasury on the warrant of the comptroller."   1 Rev. St. (8th Ed.) 618.

It is urged by the learned counsel for appellants that the title of the
state had not failed, and that the comptroller, in assuming to decide
to the contrary, acted without jurisdiction, and that his deter-
mination was void; that, at the time of the passage of chapter
448 of the Laws of 1885, the certificate of sale to the state, under
which applicant was in possession of the lands in question, had
been outstanding over two years and was outstanding at the
time of the cancellation, and that over six months since the passage
of the act of 1885 had then elapsed; that the grounds of the cancella-
tion were not jurisdictional defects in the proceedings, but mere
irregularities, which were cured by the statute of 1885.   The above-
quoted provision of the statute (1 Rev. St. [8th Ed.] p. 618), while pro-
viding that, when the title of the state, to land granted under its
authority shall fail, it shall be the duty of the commissioners to
direct the payment of the purchase money paid into the state therefor,

conferred no power upon the commissioners to determine the fact as to the state's failure of title. The act is silent in that regard. But sections 83–85, c. 427, Laws 1855, confer upon the comptroller of the state power to pass upon the question of the validity of a tax sale of lands. It has been held that the power of the comptroller, under this act, is in the nature of a judicial function. People ex rel. Ostrander v. Chapin, 105 N. Y. 309, 11 N. E. 510. Sections 83–85, c. 427, Laws 1855, were not repealed by chapter 448, Laws 1885, either directly or by implication. The act of 1885 is merely an amendment of section 65 of the act of 1855. The amendment provides a rule of evidence for the comptroller and for courts, when the validity of a tax sale is called in question, leaving the balance of the act of 1855 in full force. See People v. Wemple, 139 N. Y. 240, 248, 34 N. E. 883. By the presentation of the application of Peter Harris to the comptroller, that officer, under the statute, acquired jurisdiction to pass upon the question of the validity of the tax sales referred to. The petition for the mandamus states that Harris duly made application to the comptroller, under and in pursuance of the provisions of chapter 448, Laws 1885, and as authorized thereby and by law, to cancel said tax sales, and the comptroller, upon said application and the papers presented therewith, did, by proper order and decision, duly cancel, annul, and set aside said sales, as wholly illegal and void. This was a sufficient averment of the proper presentation of the application to the comptroller by Harris, and of the judgment or decision rendered thereon by that officer. Code Civ. Proc. §§ 532, 2080; Brownell v. Town of Greenwich, 114 N. Y. 518, 22 N. E. 24; Cutting v. Massa, 15 N. Y. St. Rep. 316. There was no general denial interposed to the allegations stated in the petition. It was not denied that Harris duly presented his application to the comptroller to have said tax sales canceled, or that the comptroller duly rendered his decision on such application, except such denial as is contained in the affidavit read on the part of the appellants, which merely states the grounds on which the comptroller rendered his decision. But the affidavit contained no allegation showing, or tending to show, that the matter was not regularly and properly brought before the comptroller for his decision. The applicant, therefore, claiming that the tax sales in question were wholly void, applied to the comptroller, under the statute, to cancel them, and offered proof before that officer, who, after hearing the proofs, did determine that the sales were void. As we have seen, his action in passing on the question submitted to him was judicial. On the presentation of the application of Harris, he could have been compelled by mandamus to pass upon the merits thereof. People ex rel. Ostrander v. Chapin, supra. We think, therefore, that the comptroller had jurisdiction to determine the question submitted to him by the applicant, and that his judgment, unless reversed, cannot be called in question in this proceeding.

It is suggested by appellants that in fact, under chapter 448, Laws 1885, the title of the state to the lands in question had not failed; that the certificate of sale under which Harris held the lands had remained in force over two years after the last day allowed by law to redeem from such sale when the act of 1885 was passed, and had

remained in force over six months after the passage of the act before the comptroller assumed to cancel the sales, and these facts, under the act, afforded conclusive evidence of the regularity of the sales. If we assume that this position is correct, it merely follows that the comptroller decided the matter submitted to him erroneously, but it does not follow that he acted without jurisdiction. If Harris had made no application to cancel the tax sales, and had obtained a patent from the state, and afterwards commenced an action to eject some person from his land, claiming that, by the lapse of time after the act of 1885, his tax title had become valid, and the court before whom the matter was tried, disregarding the rule of evidence prescribed by the act in question, had held his title invalid, such a decision might have been an error for which the judgment could have been reversed. But, if such a judgment were not appealed from, its validity could not have been called in question in another action. The error of the court would not have divested its jurisdiction. So in this case the proceeding of applicant to have the tax sales in question canceled were regularly and properly before the comptroller. It was the business of that officer, under the statute, to pass upon the application, and in passing upon it he acted judicially. If he erred, he did so after the matter was before him for decision, and after he acquired jurisdiction. His error should not deprive him of jurisdiction, but would only render his decision liable to be reversed on certiorari. See Schaettler v. Gardiner, 47 N. Y. 404; Allen v. Railroad Co., 15 Hun, 80; Ham v. Silvernail, 7 Hun, 33; Porter v. Purdy, 29 N. Y. 106; People v. Collins, 19 Wend. 56. On the application of Harris, the duty of the comptroller was to find out and decide whether the said tax sales were or were not invalid. He had to judicially pass on the question, and had jurisdiction to do so. Had he held the sales valid, he would have acted within his jurisdiction; and so his holding them invalid, however erroneous his determination may have been, did not divest him of jurisdiction. We therefore are of opinion that the decision of the comptroller canceling the tax sales in question on the application of Harris was made in a proceeding of which that officer had acquired jurisdiction; and although he may have erred, in not being governed by the rules of evidence prescribed by the statute of 1885, and his decision might have been on that account reversed on certiorari, he did not lose jurisdiction of the case on account of such error, and his decision is binding upon the appellants.

It is claimed that the commissioners of the land office, in denying the application of Harris, acted judicially. We are not referred to any statutory authority conferring upon the commissioners power to determine the question of the validity of a tax sale. It is undoubtedly true that, if they did act judicially in denying the application of Harris, his proper remedy would be by certiorari, and not mandamus; but we think the power of the commissioners, under the provisions of the statute above quoted, is not judicial. The cases cited by appellants (People ex rel. Millard v. Chapin, 104 N. Y. 96, 10 N. E. 141, and People ex rel. Equitable Life Assur. Soc. v. Chapin, 103 N. Y. 635, 8 N. E. 368), refer to decisions of the comptroller in cases where authority to act judicially is conferred upon him by statute. If the

position of appellants is correct, Harris, having submitted his case to the comptroller, and having obtained the decision of that officer adjudicating the invalidity of the tax sales in question,—a valid judicial determination (People ex rel. Ostrander v. Chapin, supra),—is again compelled to submit the same matter for adjudication to another judicial tribunal. We think the position of appellants cannot be sustained.

We are of opinion that Harris, as grantee or assignee of Finch, was entitled to repayment of the purchase price paid by Finch to the state for the land in question. See opinion of Andrews, J., in People ex rel. Ostrander v. Chapin, supra. As to the other questions involved, we concur in the views expressed by the court below. 12 Misc. Rep. 223, 33 N. Y. Supp. 1102. The order should be affirmed, with costs.