[No. 22553. Department One. February 16, 1931.]

CARSTENS PACKING COMPANY, *Appellant*, v. GRANGER IRRIGATION DISTRICT, *Respondent*.[1]

*Cheney & Hutcheson*, for appellant.
*Ralph B. Williamson*, for respondent.

MITCHELL, J.—This action was brought by Carstens Packing Company, a corporation, to recover upon an appraisal of damages alleged to have been suffered

[1]Reported in 295 Pac. 930.

upon a breach of a written contract between the Granger Irrigation District and Carstens Packing Company.

The Carstens Packing Company owned certain lands through and over which, on March 23, 1923, it conveyed by deed to the United States a right of way for a pipe line, to be constructed by the United States for its use and the use of the Granger Irrigation District, in connection with the Yakima-Sunnyside division of the Yakima project of the United States Reclamation Bureau. On the same day, and in connection with the conveyance of that right of way, a written contract was entered into between the Granger Irrigation District, party of the first part, and Carstens Packing Company, party of the second part, reciting that the second party had that day conveyed to the United States a right of way across its land in the south half of section 10, township 10 north, range 21 E. W. M., and reciting that whereas, the consideration for the agreement of conveyance of the right of way was the promise of the Granger Irrigation District to pay to Carstens Packing Company

". . . . any actual damage accruing to the party of the second part, and to the above described land by virtue of the operations of the United States Reclamation Service in constructing of the pipe line for which said right of way was granted.

"Now, THEREFORE, in consideration of the execution of the aforementioned right of way agreement by the party of the second part, the party of the first part does hereby agree to pay to second party as damages to existing improvement upon said land such amounts as the parties hereto shall agree upon as of date September 1, 1923.

"It is understood and agreed that the party of the first part shall refill the trench and remove all surplus dirt and refuse, and in case of their failure so to do,

to pay to said party of the second part the actual costs of the labor necessary to accomplish said purpose.

"The District further agrees to pay such additional damages, if any, accruing to the party of the second part or its lessees by reason of injury to growing crops upon said land or crops to be grown upon said land during the season of 1923 by reason of the construction of said pipe line by party of the first part.

"It is hereby understood and agreed that if the parties hereto cannot agree upon the amount of damages suffered by the party of the second part by virtue of the location and construction of said pipe line, exclusive of the actual value of the land occupied, then a board of appraisers shall be selected, one by each party hereto, and the third by the two thus selected, who shall appraise the damage done to said property in accordance with the agreement herein contained, and the parties hereto agree to be bound by such appraisement.''

The United States Reclamation Bureau dug the necessary trench, and installed a concrete pipe line along this right of way for carrying water for irrigation purposes to other lands, refilled the trench (leaving the surplus dirt over the pipe line appreciably higher than the adjoining land), and finished all of the work performed by it upon and across the lands of the Carstens Packing Company, in the month of June, 1923. Shortly thereafter, upon completing the line across the lands beyond those of Carstens Packing Company, the United States Reclamation Bureau turned the irrigation line over to the Granger Irrigation District, which at all times since has controlled and operated it.

Plaintiff, claiming that it had sustained damage, appointed an appraiser and made written demand on the defendant in August, 1929, more than six years after construction had been completed across plaintiff's lands, for the appointment of an appraiser to act as

a member of a board of appraisers under the terms of the contract to appraise damages. The defendant refused to appoint an appraiser, whereupon the one appointed by plaintiff appointed another, and those two, upon giving notice of time and place, made, and, on August 30, 1929, signed a written appraisal in favor of the plaintiff in the sum of $4,200 "by reason of the operation of the United States Reclamation Service in the constructing of a pipe line for irrigation purposes across said land (exclusive of the actual value of the land, occupied by said pipe line), as provided in said agreement," and the further sum of $500 "by reason of the failure of said Granger Irrigation District to remove the surplus dirt and refuse on said land by reason of the construction of said pipe line, thereby leaving a mound or ridge of surplus dirt several feet higher than the level of the surrounding land."

On the next day, August 31, 1929, this suit was brought to recover those two amounts. The action is based upon the written appraisal. The defendant's answer consisted of general denials and an affirmative plea of the statute of limitations. Upon the trial without a jury, findings of fact and judgment were entered in favor of the defendant. The plaintiff has appealed.

During the trial, the respondent was permitted, over objection, to amend its answer by alleging that, as to the item of $4,200, the appraisal was made upon a fundamentally wrong basis. This ruling has been assigned as error. The amendment, as we understand it, went only to the appraisement as it appeared from the testimony of the appraisers themselves, and it is doubtful if any pleading was necessary in order to present the question respondent desired to present, which was more largely a question of law. However, appellant claimed no surprise on account of the amendment, nor asked for any continuance. Such matters

are subject to review and reversal only for abuse of discretion on the part of the trial court, which does not appear in this instance.

Error is assigned in refusing the item of $4,200. Appellant's argument in this respect is that, by reason of the construction of the pipe line, the alkaline condition of its farm lands became increased, to its damage in the sum mentioned. An examination of the contract shows that after the preamble, it provides for only three kinds of possible damages: (1) Damages to existing improvements on the lands, nothing of which is claimed in this case; (2) the agreement to refill the trench and remove the surplus dirt, which, it is claimed, is involved in this action; and (3) damages, if any, to growing crops of the owner or its lessees during the season of 1923, nothing of which is claimed in this action.

But it is contended, on behalf of appellant, that the basis for the $4,200 claim is found in that portion of the preamble of the contract that refers to damage accruing to the land owner and the land described, "by virtue of the operations of the United States Reclamation Service in constructing of the pipe line for which said right of way was granted." Give to that language the effect appellant contends for, as though it appeared elsewhere than in the introductory portion of the contract, still, under the facts in the case, no recovery can be had, because the court found that the loss sustained "by reason of said alkaline condition is *not* due to the operation of the United States Reclamation Service in the construction of said pipe line." This finding against the appellant relates, in precise words, to the language of the contract upon which appellant relies. The finding was made upon conflicting evidence, which, upon due consideration, clearly sustains and preponderates in favor of the finding.

As to the $500 item for not removing the surplus dirt on the pipe line, the trial court correctly found, in our opinion, that it was barred by the statute of limitations. After the construction work across appellant's lands was fully completed, more than six years elapsed before any step was taken by appellant to have the appraisal made upon which the action rests.

But it is said that the action is on the written appraisal, and that, since it was brought the next day after the appraisal was made, the statute of limitations does not bar the action; that is, the appraisal was a condition precedent to the commencement of the action. Counsel rely on several of our cases such as *Herring-Hall-Marvin Safe Co. v. Purcell Safe Co.*, 81 Wash. 592, 142 Pac. 1153, holding, in effect, that where parties enter into a written contract to submit their differences, arising out of the contract, to a board of arbitrators whose decision shall be final and conclusive, no action can be maintained on the contract until arbitration of the differences has been tendered and refused. But that rule is not one of limitation of time within which to bring an action, but rather one that goes to the question of whether there is a cause of action at all, and would be involved immediately, or at any other time upon the occurrence of the difference growing out of the contract.

Here, however, the question goes to the matter of delay on the part of the appellant in demanding an appraisal. How long may one wait? More than six years, or more than twelve years, then demand an appraisal, conduct it alone, and then sue because the condition precedent, at all times within his power of accomplishment, has just occurred or become estab-

lished? The true distinction, in our opinion, is observed in those authorities holding,

"Where plaintiff's right of action depends upon some act to be performed by him preliminary to commencing suit, and he is under no restraint or disability in the performance of such act, he cannot suspend indefinitely the running of the statute of limitations by delaying the performance of the preliminary act; . . ." 37 C. J. p. 953, § 324, and cases cited.

Among the cases cited is *Douglas County v. Grant County,* 98 Wash. 355, 167 Pac. 928, where it was contended, in effect, that, as a demand was necessary to perfect the cause of action, the commencement of the action within the statutory period after demand was sufficient. This court, holding otherwise, said:

"There are cases which maintain the principle here involved, but we think that, even among these cases, the weight and better reasoned authority is that the demand must be made within a reasonable time, and that a reasonable time, in the absence of circumstances justifying or excusing the delay, is the statutory period, and that a demand made after the statutory period is too late. (See note to *Cook v. Carpenter,* 4 Ann. Cas. 728). Under this rule it would seem the bar has run against this action. But we have followed in our previous decisions another line of cases. We have held that, where demand or some other prerequisite is necessary to the institution of a cause of action, a party may not prolong the statute by failing or neglecting to take the necessary steps to perfect his cause of action."

Other of our cases to the same effect were referred to in that case. It appears to be settled by the authorities that it is not within the policy of the law to permit one to enlarge the statute of limitations by his own delay or delinquency.

In this case, it appears that the findings and conclusions were justified by the evidence, and that they sup-

port the judgment from which the appeal has been taken.

Judgment affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and PARKER, JJ., concur.