[No. 27015. *En Banc.* July 27, 1938.]

J. P. LEFEVRE, *as Administrator, et al., Respondents,* v. WASHINGTON MONUMENT AND CUT STONE COMPANY *et al., Defendants,* THE STATE OF WASHINGTON, *Appellant.*[1]

[1]Reported in 81 P. (2d) 819.

538

*The Attorney General* and *L. C. Brodbeck, Assistant,* for appellant.

*Joseph McCarthy* and *E. A. Cornelius,* for respondents.

MILLARD, J.—This action was brought to quiet title to certain shore lands on Silver lake, in Spokane county, and to recover, on the ground of mistake, the amount paid to the state for the purchase of the shore lands in question. Trial of the cause to the court resulted in findings of fact, summarized as follows, against which the evidence does not preponderate:

Plaintiffs entered into a contract with the state of Washington for the purchase of shore lands on Silver lake, in Spokane county. The state and its vendees were mistaken in their belief that the state owned the shore lands in question, as the lake is non-navigable.

Silver lake, which is approximately one mile from the town of Medical Lake, has no inlet or outlet. It is formed by surface water and is surrounded by more or less barren land, some of which is utilized for farming. In its original state, the lake was about eighty feet in depth at its deepest point and, according to the meander lines, was about three and one-half miles long and from one-fourth of a mile to a little more than one-third of a mile wide. The lake at each end, as shown by the meander lines, is composed of tullies and weeds,

so that at either end of the lake there could not be any navigation. These marsh lands extended about one mile on one end of the lake and about three-fourths of a mile on the other end.

The lake is now nineteen feet lower than in its original state, by reason of the fact that, many years ago, water was pumped from the lake for irrigation purposes. At either end of what was called "lake," at the time the original survey was made, is now meadow land. This was formerly tullies and marsh land before the lake was lowered by use of its water for irrigation purposes. The north end of the lake is cut off by a county road, which runs across that end of the lake about one mile from the original north meander line of the lake, which road was constructed on a fill. No water has been pumped from this lake for irrigation purposes for many years, and it is gradually, but slowly, rising.

This lake has never been used for anything other than pleasure boats. At present, there are no pleasure boats on this body of water, which has never been used for any commercial purpose. It is not situated so that it is ever likely to be used for the transportation of any commodity. It is simply an isolated pond of water, not in the course of any present or probable future commerce. No commodities are raised or produced anywhere in the vicinity that could be profitably transported along or across the lake. A county road runs along the shore of this lake on the east.

In this lake are islands or rocks, which now extend a considerable distance above the surface and would either be above the surface or close to the surface if the lake were in its original state. These rocks or islands would naturally interfere with any commercial navigation were it attempted.

The court concluded that Silver lake was non-

navigable, that plaintiffs' title to the shore lands in question should be quieted, and that plaintiffs were entitled to judgment for the amount paid by them to the state on their contract for the purchase of those shore lands. A decree in consonance with the foregoing findings and conclusions was entered. The state has appealed.

The state first contends that its motion to require respondents to separately state their causes of action should have been granted, and that the demurrer to the complaint should have been sustained.

The respondents voluntarily took a nonsuit and dismissed the second and third of their three causes of action. In the remaining cause of action, the respondents pray that their title to certain shore lands purchased from the state be quieted, that their contract of purchase of those shore lands from the state be canceled, and that they be awarded recovery of the amount paid by them under the contract to the state for the purchase of the shore lands which are the subject matter of this controversy.

Counsel for the state insist that, while the action to quiet title is properly brought in Spokane county, where the land is situated, the action to cancel the contract of purchase and to recover the money paid thereunder by mistake is an action or claim against the state, which must, under the statute fixing the venue of actions against the state as the superior court for Thurston county, be prosecuted in Thurston county.

"Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court of Thurston county. . . . Provided, that actions for the enforcement of foreclosure of any lien upon, or to determine or quiet title to, any real property in which the state of Washington is a necessary or proper party defendant may be commenced and prosecuted to judg-

ment against the state in the superior court of the county in which such real property is situated, . . ." Rem. Rev. Stat., § 886 [P. C. § 6260].

It will be noted that the statute provides that an action to quiet title to any real property in which the state of Washington is a necessary or proper party defendant is a local action and may be brought in the county where the land is situated. Respondents' action, the primary purpose of which is to quiet title to real property in Spokane county, is necessarily an equitable one. A court of law cannot give adequate relief in this case; therefore, equity is required to take jurisdiction of the action, the venue of which is in Spokane county. Having taken jurisdiction of a case, a court of equity will retain jurisdiction for the purpose of granting complete relief to the parties. 21 C. J. 134, 137. See, also, *Income Properties Inv. Corp. v. Trefethen,* 155 Wash. 493, 506, 284 Pac. 782.

It was not the intent of the legislature, in fixing the forum in which the state may be sued, to require a citizen of one county to bring his action in the court of that county to quiet title to land therein, and then require him to institute another action in Thurston county against the state to recover money mistakenly paid to the state by that citizen for the land in a county other than Thurston county. An analogous authority is *State v. Superior Court for Walla Walla County,* 167 Wash. 334, 9 P. (2d) 70.

The state next contends that Silver lake is a navigable body of water; therefore, the shore lands and the bed of the lake are owned by the state.

The question whether the lake is navigable is one of fact. *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114. Silver lake is small. The trial court found that it was "simply an isolated pond of water, not in the course of any present or probable future commerce," and, in

effect, that its total surface area was less than four hundred acres. Silver lake, like Cow lake in *Smith v. State*, 184 Wash. 58, 50 P. (2d) 32, has no inlet or outlet. For all practical purposes, under the findings, which are amply sustained by the evidence, the character of Silver lake, its situation and surroundings, are the same as the conditions and surroundings of Angle lake, which in *Snively v. State*, 167 Wash. 385, 9 P. (2d) 773, was held to be non-navigable, and Cow lake, which in *Smith v. State*, 184 Wash. 58, 50 P. (2d) 32, was held to be non-navigable.

Silver lake is not capable of being used to a reasonable extent in the carrying on of commerce in the usual manner by water. It is not used, nor is it susceptible for use in its natural and ordinary condition, as a highway for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. The lake is not so situated, nor does it have such length and capacity, as will enable it to accommodate the public generally as a means of transportation. The trial court aptly said, respecting the absence of those elements essential to navigability under the rule announced in *Proctor v. Sim*, 134 Wash. 606, 236 Pac. 114,

"Not even the liveliest enthusiast will claim that the lake in question possesses any one of these characteristics, nor can such enthusiast imagine that it will acquire any one of these characteristics in the future. There is no commerce surrounding this lake to be transported and the lake can't be a highway for it starts from nowhere and leads nowhere. While it has sufficient depth to float a boat of commercial size, yet the boat could come from nowhere and could go nowhere."

Counsel for the state does not contend that the conditions and surroundings of Angle and Cow lakes, which we held were non-navigable, are materially different from the conditions and surroundings of Silver

lake. It is the position of the state that the principle upon which *Snively v. State, supra,* and *Smith v. State, supra,* were decided is unsound, which principle is stated in the following language from the opinion in *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114.

"Navigability is always a question of fact. Whether a body of water is navigable in the true sense of the word depends, among other things, upon its size, depth, location and connection with, or proximity to, other navigable waters. It is not navigable simply because it is floatable for logs or other timber products, or because there is sufficient depth of water to float a boat of commercial size. A lake which is chiefly valuable for fishing or for pleasure boats of small size is ordinarily not navigable. In order to be navigable it must be capable of being used to a reasonable extent in the carrying on of commerce in the usual manner by water. 'Navigability in fact is, in the United States, the test of navigability in law; and whether a river is navigable in fact is to be determined by inquiry whether it is used, or is susceptible for use, in its natural and ordinary condition, as a highway for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.' *Oklahoma v. Texas,* 258 U. S. 574, 66 L. Ed. 771. 'Navigable waters mentioned in § 1, of article 17, of our state constitution include only such waters as are navigable for general commercial purposes.' *Watkins v. Dorris,* 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199; *Harrison v. Fite,* 148 Fed. 781. To be navigable a lake must be so situated and have such length and capacity as will enable it to accommodate the public generally as a means of transportation. *Griffith v. Holman,* 23 Wash. 347, 63 Pac. 239, 83 Am. St. 821, 54 L. R. A. 178. It is clear to us that Duck lake does not meet these qualifications. It is wholly within the lands owned by appellants, and it is about 1,300 feet in length and 1,000 feet in width, and from 40 feet to 50 feet in depth at its deepest point and covers about 25 acres. It is from 60 to 70 feet below the average level of the surrounding lands. The principal use to which it has heretofore

been put has been as a pleasure resort for boating and fishing, swimming and skating. It is meandered, but all of the authorities hold that that fact does not make a river or lake navigable. It is stated in the briefs, and seems to be conceded, that this lake does not connect with, nor is it in the immediate vicinity of, any navigable waters, nor are there on its shores any place where commerce is carried on."

The question whether Silver lake is navigable is foreclosed by *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114, in which we enunciated the rule quoted above. That authority has been followed a number of times and now stands unimpaired; therefore, unless we are now disposed to change or discredit that rule, the judgment should be, and it is, affirmed.

HOLCOMB, MAIN, ROBINSON, and SIMPSON, JJ., concur.

BLAKE, J. (dissenting)—I cannot acquiesce in a rule which deprives the state of property that is expressly reserved to it in the constitution. For the reasons stated in the dissenting opinion in *Smith v. State,* 184 Wash. 58, 50 P. (2d) 32, I dissent.

BEALS and GERAGHTY, JJ., and STEINERT, C. J., concur with BLAKE, J.