[No. 27341.  *En Banc.*  July 26, 1939.]

GEORGE A. PURDY, *Respondent*, v. THE STATE OF
WASHINGTON, *Appellant.*[1]

*The Attorney General* and *L. C. Brodbeck, Assistant,*
for appellant.

*Koenigsberg & Sanford,* for respondent.

MILLARD, J.—On April 30, 1926, George A. Purdy
purchased ninety-eight acres of land in King county
bordering on a small body of water known as North
lake.  This lake is about one-half mile in length, of an
average depth of nine feet, and, exclusive of that por-
tion covered by water vegetation, inundates an area
of approximately sixty-five acres of land.  There are
no commercial enterprises in the vicinity of this lake,

[1]Reported in 92 P. (2d) 880.

which is sixteen miles south of Seattle, one mile from the state highway connecting Seattle and Tacoma, and the only means of reaching the lake, to which no public road leads, is over private property.

The land department of the state informed Mr. Purdy that the state owned the shorelands contiguous to the property described above, and unless he purchased the shorelands, same would be offered for public sale to anyone who desired to purchase them. Induced by the representation of the state that it would sell the shorelands to others unless he purchased same, Mr. Purdy purchased from the state, June 18, 1926, the shorelands abutting upon his property with a frontage of 52.73 lineal chains along the meander line of the lake.

On May 25, 1936, Mr. Purdy made a written demand on the commissioner of public lands for refund of the purchase money paid by him to the state ten years previously for the shorelands described above on the ground that North lake is non-navigable, therefore the state did not own the shorelands at the time of sale. Under date of May 29, 1936, the commissioner of public lands advised Mr. Purdy:

"We can not take any steps to order or assist in the return of your money until North Lake has been declared non-navigable by appropriate court action."

Promptly thereafter, plaintiff brought this action, praying that North lake be adjudged a non-navigable lake and that he be awarded recovery of amount paid to the state for the shorelands in question. Trial of the cause to the court resulted in findings of fact and conclusions of law that North lake is a non-navigable body of water; that, prior to the trial of this cause, there had not been a judicial determination as to the navigability or non-navigability of North lake; and that plaintiff was entitled to recovery, with interest, of

amount paid by him in 1926 to the state for the shoreland. Decree accordingly was entered. The state appealed.

Counsel for the state concede that, "under the more recent decisions of this court," North lake is a non-navigable body of water, and urge reversal of the decree on the sole ground, which was properly raised in the trial court by demurrer, that the cause of action is barred by the six-year statute of limitations (Rem. Rev. Stat., § 157 [P. C. § 8162]). It is argued that the respondent's right of action, if any, accrued when the money was paid and the deed was obtained on June 18, 1926, which date was ten years prior to the date respondent commenced this action.

■ The commissioner of public lands assumed that North lake was a navigable body of water, therefore the state owned the shorelands. That the state so assumed and acted with reference to North lake, did not determine whether the lake was navigable. Navigability is a judicial question, the determination of which concludes the rights of the parties to the bed of the lake. *Snively v. State*, 167 Wash. 385, 9 P. (2d) 773; *Smith v. State*, 184 Wash. 58, 50 P. (2d) 32; *Lefevre v. Washington Monument & Cut Stone Co.*, 195 Wash. 537, 81 P. (2d) 819.

■ It was first necessary that there be a judicial determination, establishing a fact (non-navigability of the lake) as a condition precedent, before the right of action for recovery of the money paid accrued.

"Where the right to sue, to resort to the particular remedy, or to proceed against particular persons depends upon the prior ascertainment of facts, or the establishment of particular conditions upon which the peculiar liabilities may be enforced, the running of the statute begins from the ascertainment of such facts or the establishment of such conditions, and not until then." 37 C. J. 955.

Respondent's cause of action for a refund of the purchase price paid to the state did not accrue until North lake was judicially decreed non-navigable in the case at bar. No action for the refund would lie until the question of navigability or non-navigability of the lake was judicially determined. See *In re Harris,* 33 N. Y. Supp. 1102, 12 Misc. Rep. 223; *Same,* 36 N. Y. Supp. 29, 90 Hun 525; *Sweeney v. Butte,* 64 Mont. 230, 208 Pac. 943; *United States v. Louisiana,* 123 U. S. 32, 31 L. Ed. 69.

In *United States v. Louisiana, supra,* it was held that the action of a state in the court of claims to recover moneys received by the United States from sales of swamp lands granted to the state by the act of September, 1850, was not barred by the statute of limitations until six years after the amount is ascertained from proofs of the sales before the commissioner of the general land office. The facts are as follows in that case:

In 1850, the Congress of the United States enacted a statute under which the several states were given the swamp lands and overflowed lands within the borders of those states. In Louisiana and in other states the secretary of the interior neglected, as the statute required, to forward a list of the lands to the governors of the several states and, at their request, issue patents for the swamp and overflowed lands. As a result of that negligence, the United States sold swamp and overflowed lands within the borders of the several states, which lands, by reason of the law in question, belonged to those states. A remedial act of Congress, in 1855, provided that the United States should pay for those lands to the states affected. To obtain the money from the United States, it was necessary that the authorized agent of the state should first make due proof

to the United States commissioner of public lands. The lands in question which belonged to the state of Louisiana were sold prior to March 3, 1857. In 1886, almost thirty years later, the state of Louisiana commenced an action against the United States in the court of claims to recover amount due the state under the act of 1855. The United States interposed a defense based upon the statute of limitations, it appearing that the sale of lands upon which the action was bottomed occurred almost thirty years prior to commencement of the action. The supreme court of the United States held that the statute of limitations was not a bar, saying:

"The statute of limitations does not seem to us to have any application to the demand arising upon the swamp-land acts. The act of 1850 contemplates that the Secretary of the Interior will identify the lands described, and although the State could not be deprived of her rights by the inaction of that officer, *Wright v. Rosenberry,* 121 U. S. 488, 501, she was not obliged to proceed in their assertion in the absence of such identification. By the act of 1855, which provided for the payment to the State of moneys received by the United States on the sales of swamp lands within her limits, the payment was made to depend upon proof of the sales by the authorized agent of the State before the Commissioner of the General Land Office. No such proof was ever made or offered, and, therefore, until in some other equally convincing mode the swampy character of the lands sold was established to the satisfaction of the Commissioner, no definite ascertainment of the amount due to the State was had, so as to constitute a ground of action for its recovery in the Court of Claims. The method of proving the character of such lands by having recourse to the field-notes of the public surveys of the Surveyor-General of the State was adopted by the Commissioner as early as 1850, and was followed by him in this case in 1885. On the 30th of June of that year, he found in this mode and certified that there was due to the State from such

sales the amount stated above. From that date only the six years within which the action could be brought in the Court of Claims began to run; and this action was commenced in September of the following year."

The judgment is affirmed.

MAIN, STEINERT, SIMPSON, and JEFFERS, JJ., concur.

GERAGHTY, J. (dissenting)—I am unable to concur in the majority opinion. Conceding the respondent's right to recover, that right accrued in June, 1926, when he paid his money to the state. Not having brought suit within six years thereafter, his right of action was barred by the statute.

"His legal right to recover back his money existed from the moment he paid it, and his ignorance of his legal right to do so will not excuse him from filing his suit within the two years within which suits must be brought on open accounts for money had and received. There was no fraud or concealment of facts on the part of appellant pleaded or proved. The fact that appellee believed until July 1, 1892, that he had acquired a good and valid title from appellant, did not prevent the statute from running against him. He was simply mistaken as to the law governing such cases, and no man can be heard to plead his ignorance of the law." *Reyner Cattle Co. v. Bedford,* 91 Tex. 642, 44 S. W. 410, 45 S. W. 554.

"As a general rule, the statute of limitations begins to run from the time the right of action accrues (*Yore v. Murphy,* 18 Mont. 342, 45 Pac. 217), and not when the plaintiff who was ignorant before comes to a knowledge of his rights . . ." *Kerrigan v. O'Meara,* 71 Mont. 1, 227 Pac. 819.

"Statutes of limitation are founded on public policy and are favored in the law. Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the

means of knowledge are the same in effect as knowledge itself. . . . We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will toll the statute." *Arkansas Natural Gas Co. v. Sartor*, 78 F. (2d) 924.

The respondent contends that the establishment of non-navigability was a condition precedent to the accrual of a right of action. Neither the commissioner of public lands nor any other administrative agency of the state was authorized to determine the navigability of the lake. It was a question for judicial determination, and the state was not called upon to move in the matter. The burden of initiating an action was upon the respondent.

BLAKE, C. J., BEALS, and ROBINSON, JJ., concur with GERAGHTY, J.