[No. 28114. *En Banc.* June 13, 1941.]

WASHINGTON SECURITY COMPANY, *Respondent,* v. THE STATE OF WASHINGTON *et al., Appellants.*[1]

[1]Reported in 114 P. (2d) 965.

198

The Attorney General, W. A. Toner and June Fowles, Assistants, for appellants.

Cyrus Happy and Horace G. Geer, for respondent.

JEFFERS, J.—This action was instituted by Washington Security Company, a corporation, against the state of Washington and A. C. Martin, commissioner of public lands, to recover from the state the sum of $951.30, together with interest thereon at six per cent per annum from August 20, 1926.

The complaint alleges that Gravelly lake is a non-navigable body of water, situated in Pierce county, Washington, covering approximately one hundred sixty-seven acres, the greatest depth being approximately ninety feet; that the lake is approximately forty-two hundred feet in length and twenty-eight hundred feet in width at the longest and widest points, has no surface or visible inlet or outlet, and is not connected with any other lake or stream.

The complaint further alleges that all the land abutting upon and adjacent to Gravelly lake is privately owned and used, consisting entirely of permanent homes and homesites; that there are no commercial enterprises of any kind or nature located upon the lake or the shores thereof, or immediately adjacent thereto; that none of the abutting land is owned by any municipal corporation; that, on or about August 20, 1926, plaintiff corporation was the owner in fee simple of land abutting upon Gravelly lake (described in detail in the complaint), "together with all shore lands of the second class situate in front of, adjacent to, or abutting upon the above described lots"; that, prior to August 20, 1926, the state, by and through C. V. Savidge, the then duly elected and acting commissioner of public lands, represented to plaintiff that the state was the owner of the shore lands abutting the above described property of plaintiff, and advised plaintiff that such shore lands were to be disposed of and sold by the state.

The complaint states that plaintiff, acting upon these representations and statements made by the commissioner on behalf of the state, on August 20, 1926, purchased from the state the above-described shorelands, for the sum of $951.30, receiving from the state a deed purporting to convey title to such shore lands, which deed was dated August 20, 1926, and duly filed for record on August 28, 1926.

The complaint further alleges that title to the shore lands so purchased by plaintiff was not at that time vested in the state, but title thereto was vested in plaintiff, as the abutting land owner; that, prior to the sale of the shore lands to plaintiff, Gravelly lake had not been, nor has it since been, adjudicated to be a navigable body of water, but was and is now a nonnavigable lake, which facts were not, on August 20, 1926, nor at any time prior to January 23, 1940, known to plaintiff; that, on January 23, 1940, plaintiff made demand upon A. C. Martin, commissioner of public lands, for the return of the purchase price paid by it, in the sum of $951.30, together with interest at six per cent per annum from August 20, 1926, which repayment the commissioner refused to make.

The complaint then prays that Gravelly lake be decreed to be a non-navigable body of water, and that plaintiff have judgment against defendants for the above amounts.

To this complaint defendants demurred, and on May 15, 1940, the court entered an order overruling the demurrer. In a memorandum opinion filed May 7, 1940, the trial court stated that the only question before it was whether or not the action had been commenced within the time limited by law, and further stated that this question had been determined adversely to the state in the case of *Purdy v. State*, 199

Wash. 638, 92 P. (2d) 880, on a state of facts on all fours with the case at bar.

After the state's demurrer had been overruled, defendants filed an answer, in which, by way of a further answer and affirmative defense, it is alleged that, according to the rules and decisions of this court, Gravelly lake was, and at all times mentioned in the complaint had been, a non-navigable body of water; that plaintiff, on August 20, 1926, and at any and all times subsequent thereto, had a right and privilege to have the lake adjudged and decreed to be a non-navigable body of water, and had the right to the recovery of the sum of $951.30, paid on August 20, 1926; that the claim of plaintiff for a refund of the purchase price paid by it to the state had not been brought within the time limited by law, and, as a matter of fact, has not been brought within thirteen years of the time when the same might have been instituted; that plaintiff's claim for refund is untimely, and that plaintiff has exercised no diligence whatever in seeking to recover the payment made by it to the state, and its claim is barred by laches and by neglect to proceed within a reasonable time.

Plaintiff interposed a motion to strike the affirmative matter in defendants' answer, and also demurred thereto, and thereafter, on June 25, 1940, the trial court entered an order denying plaintiff's motion to strike, and sustaining its demurrer.

The court also, on June 25, 1940, made and entered an order adjudging defendants to be in default, the order reciting that defendants refused to plead further in the action. On the same day, the court made and entered findings of fact, conclusions of law, and judgment, by which the court adjudged Gravelly lake to be a non-navigable body of water, and also gave judgment to plaintiff against defendants for $951.30, to-

gether with interest thereon at the rate of six per cent per annum, from August 20, 1926, until the judgment is paid and satisfied. Defendants have appealed from the judgment entered.

Appellants base their claim of error upon the court's holding that an upland proprietor who bought shore lands from the state was entitled to recover the purchase price and interest thereon, in an action instituted more than thirteen years after such payment to the state.

The sole question herein presented is whether or not respondent's cause of action is barred by the statute of limitations.

The same question is presented in this case whether we consider the action barred in two years or six years, although it seems to be conceded that, if any statute of limitations is applicable, the six-year statute applies.

■ The state purported to sell to respondent certain shore lands which the state did not own, but which belonged to respondent by virtue of its owning the abutting property. For this land, respondent paid to the state a consideration in money. There is no doubt in our minds but that, as a matter of law, unless the action is otherwise barred, respondent is entitled to a refund of the money paid to the state. See Restatement of the Law of Restitution (1936), 110, § 24; 206-8, § 52.

"Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by statute; . . ." Rem. Rev. Stat., § 155 [P. C. § 8160].

■ A cause of action or suit arises, according to the universal rule in courts of both law and equity, when and as soon as the party has a right to apply to the proper tribunal for relief (*Sterrett v. Northport*

*Mining & Smelting Co.,* 30 Wash. 164, 70 Pac. 266); or, as stated in *State ex rel. McMillan v. Miller,* 108 Wash. 390, 184 Pac. 352, quoting from 17 R. C. L. 749; " 'A cause of action accrues the moment the right to commence an action comes into existence.' "

In *Morton v. Nevada,* 41 Fed. 582, the rule is stated as follows, quoting from *Palmer v. Palmer,* 36 Mich. 487, 24 Am. Rep. 605:

" 'A cause of action accrues for the purpose of setting the statute in motion as soon as the creditor by his own act, and in spite of the debtor, can make the demand payable.' "

■ In the instant case, respondent, immediately upon payment by it to, and receipt by, the state of the purchase money, could have instituted an action to recover the purchase price paid. *Morton v. Nevada, supra; Union Pac. R. Co. v. Barnes,* 64 Fed. 80.

The rule relative to the right of one in the position of respondent to recover is well stated in *Leather Manufacturers' Bank v. Merchants' Bank,* 128 U. S. 26, 32 L. Ed. 342, 9 S. Ct. 3, as follows:

"Whenever money is paid upon the representation of the receiver that he has either a certain title in property transferred in consideration of the payment, or a certain authority to receive the money paid, when in fact he has no such title or authority, then, although there be no fraud or intentional misrepresentation on his part, yet there is no consideration for the payment, and the money remains, in equity and good conscience, the property of the payer, and may be recovered back by him, without any previous demand, as money had and received to his use. His right of action accrues, and the statute of limitations begins to run, immediately upon the payment."

We are satisfied that, in the instant case, no event had to occur before respondent's right of action accrued. Nothing had to be alleged, or was alleged, in respondent's complaint which could not have been

alleged immediately upon payment of the purchase price by respondent. Mere doubt in the mind of respondent as to its right to recover could not suspend the running of the statute.

It is true that it was not then determined that Gravelly lake was non-navigable. Neither had that been established at the time the present action was instituted. Proof of non-navigability was but a part of the affirmative proof which respondent was required to make to establish its cause of action. That the lake is non-navigable was the premise upon which rested respondent's claim that it already had title to the shore lands which the state purported to sell to it. We are convinced that the fact that non-navigability had not been previously judicially determined could no more have barred respondent's right to institute this action than could the fact that a defendant's negligence had not been previously established affect the right of a plaintiff to sue for personal injuries. It is our opinion that neither prior adjudication of negligence in the one case, nor prior adjudication of non-navigability in the other, is a condition prerequisite to the right of the respective plaintiffs to sue. In each instance, proof of these matters is but proof going to the merits of the alleged cause of action.

As has been stated, the trial court, in this case, based its decision upon the case of *Purdy v. State*, 199 Wash. 638, 92 P. (2d) 880, and it is contended by respondent that the instant case is controlled by our decision in the *Purdy* case. It may be admitted that the material facts in the instant case are identical with those in the *Purdy* case, and it is true that, in the *Purdy* case, we held that the plaintiff's right to recover was not barred by the statute of limitations. The decision is based upon the conclusion therein arrived at that

"It was first necessary that there be a judicial determination, establishing a fact (non-navigability of the lake) as a condition precedent, before the right of action for recovery of the money paid accrued."

Upon a reexamination of the opinion in the *Purdy* case and the authorities therein cited to sustain it, and other authorities not cited therein, we are now satisfied that we reached a wrong conclusion in that case, and that it must be overruled. We are in accord with the rule applied in the *Purdy* case, that, where a condition precedent to the accrual of a cause of action exists, the cause of action does not accrue until the condition is met, and that the statute of limitations does not begin to run until that time. But we are now of the opinion that the rule was misapplied to the facts in the *Purdy* case, and likewise has no application to the facts in the instant case.

Prior judicial determination of non-navigability is not made a condition precedent to the accrual of respondent's cause of action by statute, by common law, or by the decisions of this court prior to the *Purdy* case. Respondent's right to sue had fully matured on the day it paid its money to the state. It is apparent from the pleadings in the *Purdy* case that no condition existed at the time suit was actually brought, different from that which existed at the time the purchase money was paid, and this is also true in the instant case. We do not believe the decision in the *Purdy* case squarely supports the language used therein, yet we must admit it purports to do so. It is therein asserted that prior judicial determination of non-navigability is a condition precedent to the plaintiff's right to sue. Yet that action was commenced and was successfully concluded in plaintiff's favor, without a previous judicial determination of non-navigability.

We are clearly of the opinion that judgment for the

plaintiff could not have been rendered, if a true condition precedent to his right to sue had existed, and had not been complied with at the time suit was commenced. It must follow, then, it seems to us, that the *Purdy* case did not actually treat the prior judicial determination of non-navigability as a condition precedent to the plaintiff's right to sue. In that case, no reason is assigned for our conclusion that there existed a condition precedent to the accrual of a right of action. That conclusion seems to have been based upon the statement that navigability is a judicial question, citing *Snively v. State,* 167 Wash. 385, 9 P. (2d) 773; *Smith v. State,* 184 Wash. 58, 50 P. (2d) 32; and *Lefevre v. Washington Monument & Cut Stone Co.,* 195 Wash. 537, 81 P. (2d) 819.

In *Snively v. State, supra,* the plaintiff brought an action against the state to quiet title to certain shore lands on Angle lake. In the cited case, we quoted from *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114, as follows:

" 'Navigability is always a question of fact. Whether a body of water is navigable in the true sense of the word depends, among other things, upon its size, depth, location and connection with, or proximity to, other navigable waters.' "

The opinion in the *Snively* case continues:

"Under the assumption that all inland lakes are navigable bodies of water, the state sells the shore lands thereof. That the state so assumed and acted with reference to Angle lake, did not determine whether the lake was or was not navigable. Navigability is a judicial question, the determination of which concludes the rights of the parties to the bed of the lake. By purchasing the shore lands from the state, the respondents did not admit that the lake was navigable. They were not estopped by such purchase to deny the title of the state to the bed of the lake."

*Smith v. State, supra,* involved the character of water, whether navigable or non-navigable, in Cow

lake. The opinion states: "The sole question in the case relates to the navigability of the water." The opinion then cites *Proctor v. Sim, supra,* to the effect that navigability is a question of fact. Following the rule announced in the *Snively* case, *supra,* we affirmed the lower court's holding that Cow lake was non-navigable, and quieted plaintiff's title to certain shore lands.

*Lefevre v. Washington Monument & Cut Stone Co., supra,* was an action brought to quiet title to certain shore lands on Silver lake, and to recover the amount paid to the state for the purchase of such shore lands. Plaintiffs had entered into a contract with the state to purchase the shore lands. The opinion, referring to the action of the lower court, stated:

"The court concluded that Silver lake was non-navigable, that plaintiffs' title to the shore lands in question should be quieted, and that plaintiffs were entitled to judgment for the amount paid by them to the state on their contract for the purchase of those shore lands."

The judgment of the lower court was affirmed by this court.

It does not appear from the opinion in any of the three cases last above referred to, other than the *Lefevre* case, that the plaintiff was asking for a return of the purchase money paid to the state. Nor does it appear that the statute of limitations was involved in any of the cases. However, in the *Lefevre* case it is apparent that there had been no prior judicial determination of non-navigability, but that fact was established as a part of the proof offered by plaintiffs to sustain their cause of action. Obviously, the fact that non-navigability is a judicial question has no relation to the question of whether the determination of that question is a condition precedent to the accrual of a plaintiff's right to sue.

In support of the statement in the opinion in the *Purdy* case, that a prior adjudication of non-navigability was a condition precedent to the accrual of the plaintiff's right of action, we cited *In re Harris,* 33 N. Y. Supp. 1102, 12 Misc. 223; Same, 36 N. Y. Supp. 29, 90 Hun (N. Y.) 525; *Sweeney v. Butte,* 64 Mont. 230, 208 Pac. 943; *United States v. Louisiana,* 123 U. S. 32, 31 L. Ed. 69, 8 S. Ct. 17.

*In re Harris, supra,* was an action brought by Harris to compel the commissioner of the land office to make an *order* refunding certain money paid to the state as the purchase price of certain lands bought at tax sales. The land had originally been purchased by one Finch, and, at the time of the sale, Finch paid into the state treasury the amount of the purchase price, taking the usual receipt of the comptroller and state treasurer. No deed was ever given to Finch. Thereafter, Finch sold and transferred to Harris the certificate of sale received by him. Thereafter, Harris claimed to have discovered that the tax sales were irregular and void, and he thereupon presented his application to the comptroller. One of the contentions made by the state was that the statute of limitations had run against relator's cause of action. The opinion states:

"In determining the question of the statute of limitations, assuming that the statute runs in favor of the state, it is only necessary to determine when the relator's right to demand the refunding of this money accrued, as the statute would commence to run, if at all, at that time. The language of the statute under which this claim is made is as follows:

" 'Whenever the title of the people of this state to lands granted under its authority shall fail, and a legal claim for compensation on account of such failure shall be preferred by any person entitled thereto, it shall be the duty of the commissioners to direct the payment of the original purchase moneys which may have been paid to the state by such person, with interest at the

rate of six per cent. from the time of such payment, to be paid out of the treasury on the warrant of the comptroller.' "

The opinion continues:

"It is manifest that, *under this provision of the statute,* repayment of the money paid by Finch for these lands could not be claimed of the state until the title of the state had been, *by an order and decision of the comptroller,* canceled, annulled, and set aside, which order was not made until the 29th day of March, 1892. From that time until the time of commencing these proceedings, the statute of limitations would not be a bar . . ." (Italics ours.)

It is evident in the last cited case, that, because of the statute, it was held no right of action accrued against the state until the comptroller had made an order, etc.

In this state we have no statute authorizing or directing the commissioner of public lands, or any other state officer, to make any order or determination relative to the navigability of lakes. The state only assumes that all inland lakes are navigable, and proceeds to sell the shore lands. *Snively v. State, supra.*

*Sweeney v. Butte, supra,* was an action instituted against the city of Butte, to recover back salary of Sweeney, as a member of the police department, from May 1, 1918, to July 25, 1920, during which period he had been wrongfully ousted from his position by the mayor. Prior to the commencement of the action, Sweeney had brought a mandamus suit against the city, to compel it to return him to the position from which he had been removed, and for the salary incident to the office. On July 24, 1920, a judgment was entered in the mandamus action, decreeing that Sweeney had been unlawfully ousted from his position. The action by Sweeney first herein referred to was not commenced until September 1, 1920, and it was

contended by the city that inasmuch as chapter 11, enacted at the extraordinary session of the sixteenth legislative assembly of Montana, provided that actions to recover salaries by members of the police department of cities must be commenced within six months after the cause of action should have accrued, Sweeney could not recover any salary except that which accrued six months immediately prior to September 1, 1920. Sweeney contended that, inasmuch as he had been wrongfully ousted and removed from his office, he must first have himself restored to the office before he could maintain his action for compensation, and therefore his cause of action did not "accrue" until the date of the judgment in the mandamus proceeding, awarding him the office and its emoluments. The court held that Sweeney's cause of action did not accrue until the rendering of the judgment awarding him the office, for he could not maintain an action to recover his compensation until it had been judicially determined that he had been wrongfully ousted.

The *Sweeney* case really turned upon the scope of a mandamus action under the Montana statute, and should be read in the light of the prior case of *Bailey v. Edwards,* 47 Mont. 363, 133 Pac. 1095, and the subsequent case of *Sullivan v. Butte,* 65 Mont. 495, 211 Pac. 301. The *Bailey* case established the rule that in Montana a police officer's right to compensation for the time he is wrongfully deprived of his position cannot be adjudicated in a mandamus proceeding brought to compel his reinstatement. The *Sullivan* case, *supra,* limits the judgment entered in the Sweeney mandamus action by stating that the words "and to the emoluments" should have been omitted, for the reason that "manifestly the judgment in mandamus could not go further than to determine the right to the of-

fice." Otherwise the *Sullivan* case affirmed the rule announced in the *Sweeney* case.

■ We do not, in this state, follow the Montana rule relative to mandamus proceedings. The rule in this state relative to the scope of mandamus proceedings is stated in *State ex rel. Billings v. Lamprey*, 57 Wash. 84, 106 Pac. 501, as follows:

"In this state a proceeding in mandamus,

" ' . . . is a judicial investigation, the object of which is the determination of civil rights, the same as any ordinary proceeding; not only the determination of rights, but their determination in such a way as to culminate in an effective judgment.' *State ex rel. Race v. Cranney*, 30 Wash. 594, 71 Pac. 50.

" 'In our practice, mandamus is nothing more than one of the forms of procedure provided for the enforcement of rights and the redress of wrongs. The procedure has in it all the elements of a civil action. . . . .' *State ex rel. Brown v. McQuade*, 36 Wash. 579, 79 Pac. 207."

We have in this state many times permitted a wrongfully discharged or suspended civil service employee to bring a single action, in which could be determined both the wrongful character of the discharge or suspension and the right to back salary. *Bringgold v. Spokane*, 27 Wash. 202, 67 Pac. 612; *Foster v. Hindley*, 72 Wash. 657, 131 Pac. 197; *State ex rel. Roe v. Seattle*, 88 Wash. 589, 153 Pac. 336; *State ex rel. Allen v. Spokane*, 150 Wash. 542, 273 Pac. 748, 277 Pac. 999; *Haga v. Seattle*, 195 Wash. 226, 80 P. (2d) 821; *State ex rel. Cooper v. Seattle*, 199 Wash. 568, 92 P. (2d) 249.

The case most relied upon in the *Purdy* case was *United States v. Louisiana*, 123 U. S. 32, 31 L. Ed. 69, 8 S. Ct. 17. That case was an action brought in the court of claims by the state of Louisiana against the United States, to recover two demands amounting to $71,385.83. The facts in that case are quite fully set

out in the *Purdy* case, and will not be further discussed. However, considerable light is thrown upon the above decision in a discussion of the above case in *United States v. Louisiana,* 127 U. S. 182, 32 L. Ed. 66, 8 S. Ct. 1047, wherein the court stated:

"On the appeal to this court by the United States, 123 U. S. 32, it was said in the opinion of the court delivered by Mr. Justice Field, that the statute of limitations did not seem to have any application to the demand arising upon the swamp-land acts; and that, as the Commissioner of the General Land Office had not found and certified the amount due to the State from the sales of swamp lands until the 30th of June, 1885, and the suit was commenced in September, 1886, the limitation of the statute did not apply to the case."

Neither Mr. Justice Field nor any other justice dissented from the foregoing construction of the first Louisiana case. It thus appears that the supreme court viewed the swamp-land acts as requiring, preliminary to the creation of any causes of action under the act, certification of a finding by the commissioner of the general land office of the amount due from sales of swamp lands. Congress could impose, by statute, the condition upon which the state was given a cause of action against the United States. The supreme court found such a condition to have been established, and therefore held no cause of action arose until it had been complied with.

We are now satisfied the Louisiana case does not support the conclusion that a judicial determination of non-navigability was a condition precedent to the accrual of the plaintiff's cause of action in the *Purdy* case.

It may also be observed that, even if we assume that prior judicial determination of non-navigability is a condition precedent to the right of respondent in the instant case, or of the plaintiff in the *Purdy* case, to

maintain an action for money paid to the state, it would still be impossible to sustain the conclusion reached in the *Purdy* case.

It is a rule of almost universal application, which we have consistently followed, that, where a right of action depends upon some act to be performed preliminary to the commencing of suit, and the one whose duty it is to perform this act is under no restraint or disability in the performance thereof, "he cannot suspend indefinitely the running of the statute of limitations by delaying the performance of the preliminary act." *Temirecoeff v. American Express Co.,* 172 Wash. 409, 20 P. (2d) 23.

In *Douglas County v. Grant County,* 98 Wash. 355, 167 Pac. 928, we stated:

"We have held that, where demand or some other prerequisite is necessary to the institution of a cause of action, a party may not prolong the statute by failing or neglecting to take the necessary steps to perfect his cause of action."

The weight of authority is also to the effect that, where a right of action depends upon some act to be performed, the one whose duty it is to perform such act must do so within a reasonable time, and that a reasonable time, in the absence of circumstances justifying or excusing the delay, is the statutory period. *Douglas County v. Grant County, supra; Carstens Packing Co. v. Granger Irr. Dist.,* 160 Wash. 674, 295 Pac. 930.

In the instant case, no justification is shown for the delay, and more than thirteen years had passed from the time respondent paid its money to the state until it instituted this action. This clearly, in our opinion, was an unreasonable length of time to delay the doing of that which respondent claimed it had to do before its cause of action accrued.

For the reasons herein assigned, the judgment of the trial court must be and is hereby reversed, with directions to dismiss the action.

ROBINSON, C. J., MAIN, BEALS, BLAKE, and DRIVER, JJ., concur.

MILLARD, STEINERT, and SIMPSON, JJ. (dissenting)— We adhere to the opinion in *Purdy v. State*, 199 Wash. 638, 92 P. (2d) 880.

